Filed 2/6/14  P. v. Diaz CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DON RODRIGO DIAZ,<br><br>        Defendant and Appellant. | A137397<br><br>(Solano County<br>Super. Ct. No. FCR290514) |

**I.**

**INTRODUCTION**

Appellant Don Rodrigo Diaz appeals from his convictions for second degree robbery with a firearm (Pen. Code,[1] §§ 12022.5, subd. (a)(1), 12022.53, subd. (b)), and for being a felon in possession of a firearm (§ 12021, subd. (a)(1)) following a jury trial. On appeal, he challenges the sufficiency of the evidence showing that he possessed a firearm at the time he committed the second degree robbery,[2] or that he was otherwise in possession of a firearm within the meaning of the relevant statutes.

We conclude there was substantial evidence supporting the jury's findings, and therefore, affirm the judgment.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] Appellant does not contest the robbery conviction; only the firearm use enhancement and the separate possession of a firearm count.

## II.

## PROCEDURAL BACKGROUND

An amended information was filed on April 4, 2012,[3] by the Solano County District Attorney's Office charging appellant with one count of second degree robbery (§ 211) (Count One), and one count of possession of a firearm by a felon (§ 12021, subd. (a)(1)) (Count Two). Sentencing enhancements were alleged as well in the amended information. As relevant to this appeal, two such enhancements were that appellant personally used a firearm in the commission of Count One, within the meaning of sections 12022.5, subdivision (a)(1) and 12022.53, subdivision (b). Appellant pleaded not guilty to the charges and denied the sentencing enhancements allegations at his arraignment.

On August 20 the prosecution filed a motion to amend the information further by changing the sentencing enhancements relating to appellant's prior criminal record. The motion was granted without objection at the commencement of the jury trial on August 22. A jury was empanelled on August 22 and the attorneys made their respective opening statements before the trial adjourned for the day.

Testimony commenced and was completed the following day on August 23. The jury commenced its deliberations on August 24, and returned its verdict on the morning of August 27. The jury convicted appellant of both counts and found true the sentencing enhancement that he personally used a firearm in the commission of the second degree robbery. The court then conducted a bifurcated trial and found true the sentencing enhancements alleging appellant's prior convictions.

Prior to sentencing, appellant made a motion to strike the prior convictions for sentencing purposes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The motion was heard and denied on December 3. The case was then set for judgment and sentencing on December 6.

---

[3] All dates are in the 2012 calendar year, unless otherwise indicated.

At sentencing the trial court imposed the midterm of 2 years in state prison for the second degree robbery (Count 1), and a consecutive term of 10 years for the personal use of a firearm enhancement, for a total aggregate state prison term of 12 years. A 2-year state prison term was also imposed for possession of a firearm by a felon (Count 2), but that term was ordered to be served concurrently with the aforementioned 12-year sentence. Total custody credit of 361 days was awarded, and fines and penalties imposed. Notice of appeal was filed on December 10.

## III.

### EVIDENCE ADDUCED AT TRIAL RELATING TO THE FIREARM POSSESSION CHARGE (COUNT 2) AND THE PERSONAL USE ENHANCEMENT

Gustavo Nava testified that he was working as a lube technician at the 7 Flags Car Wash and Lube Express (7 Flags) in Fairfield on January 26, where he had worked for about five years. On that day, appellant, who formerly worked at 7 Flags, approached Nava. Appellant had not worked at 7 Flags for the preceding two years. The two started a conversation that was cordial, and appellant appeared to be calm and quiet. After a few minutes appellant put on some white latex gloves, which Nava thought was odd. Their conversation ended when the manager, Matthew Bodiford, asked Nava to leave the lube shop office where he and appellant had been conversing.

Bodiford testified that he had worked at 7 Flags for about ten years as the assistant manager, and during that time had worked with appellant for approximately two years. On January 26, Bodiford was in the office "counting the drawers" and getting ready to close for the day when appellant entered the office. Bodiford thought it was odd since he had not seen appellant since he left 7 Flags.

Appellant asked Bodiford if the security camera in the office was working, which made Bodiford nervous. Appellant looked around the office and commented that he "just came to get what is mine." They were interrupted when the manager opened the door briefly, and then closed it and walked away.

Just before the manager opened the door, and when appellant was saying he was there to get what was his, he pulled up his shirt and showed Bodiford the handle of a gun stuck in his waistband, and also said he was not there to hurt Bodiford or his family. Bodiford was "nervous as hell" and "afraid" because he did not know if appellant intended "hit me or shoot me in the back."

Appellant asked Bodiford for the keys to the cash drawers, which were outside in the lube shop. As Bodiford then went out to the lube area to the cash drawers, appellant followed him. Bodiford brought the drawers back into the shop and placed them on a desk. Appellant asked Bodiford to bag up the money. Bodiford asked appellant if he was serious, and appellant responded "[y]es." When Bodiford did not comply, appellant grabbed the paper money from the drawers. Bodiford saw that appellant was wearing white latex gloves on his hands.

The gun Bodiford saw was silver and had a black grip. It appeared to be real. Appellant was standing about a foot and a half from Bodiford when he showed him the gun. Bodiford looked at the gun for about 10 seconds. Appellant then ordered him to go into the back room. Bodiford complied because he was scared, testifying that "[w]hen you see somebody has a gun, you do what they say." He then heard a door shut. He waited an additional 15 or 20 seconds and then opened the back room door. Appellant was gone.

There was nothing about the appearance of the gun that suggested it was a fake. Bodiford had seen guns on television and on the street, and the one in appellant's waistband appeared to be real. On cross-examination, Bodiford explained that his father had worked at a prison so he was familiar with guns. Bodiford also owned an air soft gun with a clear casing, but he had also seen air soft guns that were not clear. He stated that he had fired a .22-caliber handgun, and did not know the difference between a revolver and a semi-automatic handgun.

Bodiford was interviewed after the robbery by Fairfield Police Officer Joseph Griego. The officer asked Bodiford to describe the weapon appellant had on his person that day. He said it was silver with black grips. Bodiford did not "sound too familiar

4

with guns." When asked if the gun was real, Bodiford said he did not know, but that "it looked real enough."

The defense case began with appellant calling Kurt Morales as a witness. Morales testified that he had known appellant since they were children. He saw appellant a few days prior to learning about the robbery when appellant stopped by where Morales was working. Morales had a CO2 cartridge pellet gun that was not working properly. The gun had to be loaded one pellet at a time. It was silver with a black plastic grip and "look[ed] like a real" semi-automatic handgun. The hammer was jammed and "you could not pull the trigger."

Morales also testified that the gun was plastic and would not appear to be real "in broad daylight. Maybe if the lights were dim . . . ." If a person glanced at it quickly, it would appear real. It did not look real to Morales because there was a screw on the bottom of the handle "where you put the CO2." Morales testified that "[i]f you looked at the gun, you would definitely see [a] knob on the bottom of the handle." The knob protruded about half an inch to an inch and could not be removed.

Morales had purchased the pellet gun about 12 years earlier. He used to carry it in his briefcase because he thought it was "cool." After it broke, he still kept it. Morales had it at his workplace for about a year before he gave it to appellant. He kept it at his workplace because he originally planned to set up a target range with another employee, but the gun broke before they could do it. Morales has not seen appellant since the afternoon when he gave him the pellet gun.

The prosecution recalled Bodiford, who testified that he was only able to see the handle of the gun in the waistband of appellant's pants when he pulled up his shirt. There was nothing protruding from the end of the handle. Bodiford could only see the hammer and butt of the gun.

## IV.

## DISCUSSION

To clarify the issue we must decide in this appeal, we note initially that appellant has not challenged the sufficiency of the evidence to support his conviction for second

degree robbery. The only issue is whether the firearm enhancements under sections 12022.5, subdivision (a)(1) and 12022.53, subdivision (b) alleged and found true by the jury, and his separate conviction for being a felon in possession of a firearm under section 12021, subdivision (a)(1) (Count 2), were supported by substantial evidence.

A "firearm" is defined, for purposes of the two challenged enhancements and Count 2, as "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." (§ 16520, subd. (a).) The parties agree that if appellant displayed a pellet gun and not a "real" firearm, there was no substantial evidence to support the true findings on the two firearm enhancements or Count 2. (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 (*Monjaras*).) Thus, the narrow question becomes whether there was substantial evidence to support the findings that appellant used a firearm in the commission of the robbery, and not a pellet gun.

In determining whether a conviction or factual findings by a jury were supported by substantial evidence "[w]e review claims of insufficient evidence by examining the entire record in the light most favorable to the judgment below. [Citation.] We review to determine if substantial evidence exists for a reasonable trier of fact to find the counts against the [defendant] true beyond a reasonable doubt. [Citation.] Substantial evidence must be reasonable, credible, and of solid value. [Citation.] We also presume the existence of every fact the [trier of fact] could reasonably deduce from the evidence in support of its judgment. [Citation.]" *(In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196; *People v. Young* (2005) 34 Cal.4th 1149, 1175.) Our inquiry is directed to whether any rational trier of fact could have found the elements of the enhancement beyond a reasonable doubt. We do not resolve credibility issues or evidentiary conflicts, because that is the exclusive province of the trier of fact. (*People v. Martinez* (2003) 113 Cal.App.4th 400, 412.) Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence' " to support the true finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

6

We conclude that Bodiford's testimony alone is sufficient to provide a evidentiary basis for the jury's findings. (Evid. Code, § 411; *People v. Lewis* (2001) 25 Cal.4th 610, 646.) Moreover, there are reasonable inferences which could be drawn from Morales's testimony which bolsters Bodiford's conclusion that the weapon appellant showed him during the robbery was real.

The gun displayed to Bodiford by appellant was silver and had a black grip, and appeared to be a real gun. Appellant was standing about a foot and a half from Bodiford when he showed him the gun. There was nothing about the appearance of the gun that suggested it was a fake. Bodiford had seen guns on television on the street, and the one in appellant's waistband appeared to be real.

Bodiford further explained that his father had worked at a prison so he was familiar with guns. He also owned an air soft gun with a clear casing, but he had seen air soft guns that were not clear. He also had fired a .22-caliber handgun.

Morales testified that his pellet gun was plastic and it would not appear to be real "in broad daylight. Maybe if the lights were dim . . . ." The robbery took place in the office of 7 Flags, and there is no indication that the lights were dim or other than what one would expect in such a setting.

Morales also testified that his pellet gun might appear real if someone glanced at it very quickly. Bodiford did not simply "glance" at the weapon, but looked at it for about 10 seconds.

As important as any other fact was Bodiford's testimony that there was nothing protruding from the end of the handle of the weapon appellant was carrying. Morales testified that his pellet gun had a screw on the bottom of the handle "where you put the CO2." He explained further that if a person saw the handle of the pellet gun, they would definitely see the knob on the bottom of the handle, which protruded about half an inch to an inch.

While there was testimony from which the jury could have believed that appellant was carrying Morales's pellet gun, or that Bodiford was not sufficiently experienced with firearms to know the difference, there also was substantial, believable evidence as noted

above from which the jury could conclude that the weapon was a "real" firearm. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

In the Third District Court of Appeal case of *Mojaras*, *supra*, 164 Cal.App.4th 1432, the issue was whether the evidence was sufficient to support the finding that the defendant personally used a firearm during a robbery within the meaning of section 12022.53, subdivision (b), one of the very same enhancements charged against appellant here. In rejecting defendant's challenge to the sufficiency of the evidence**,** our colleagues introduced the issue while explaining why it was publishing its decision: "On appeal, defendant raises a contention that we thought had been put to rest but has resurfaced in a number of appeals before this court. Pointing out that the victim could not say whether the pistol in defendant's waistband was a gun or a toy, and making the dubious assertion that he 'did not undertake any behavior suggesting that he would fire the weapon,' defendant argues the 'personal use allegation under section 12022.53, subdivision (b), was sustained merely on conjecture about the nature of the alleged weapon.' Stated another way, he claims 'there was no evidence of a gun presented to the jury to support an inference the weapon was real' and, thus, the firearm use enhancement must be reversed. We disagree.

"Defendant was not engaged in a childhood game of cops and robbers; the robbery was real, and the evidence supports a reasonable inference that the pistol he used was a real firearm, not a toy. Our point in publishing this opinion is to say in no uncertain terms that a moribund claim like that raised by defendant has breathed its last breath." (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1435.)[4]

---

[4] Despite the intention of the *Monjaras* court to discourage criminal defendants from continuously raising this "moribund" sufficiency of evidence claim, a mere three years later, the Third District found it necessary to reaffirm the rationale in *Monjaras* and additionally extend it to findings of firearm usage in assaults (§ 245, subd. (a)(2)), and personal use of firearms within the meaning of section 12022.5, subdivision (a), the second enhancement found true in this case. (See *People v. Law* (2011) 195 Cal.App.4th 976, 979.)

If anything, the evidence in *Monjaras* supporting the jury's true finding that the robbery was committed while the defendant was personally armed with a firearm was even less weighty than in this case, although the circumstances of the robbery were remarkably similar: "Here, defendant demanded of the female victim, 'Bitch, give me your purse,' then pulled up his shirt and displayed the handle of a black pistol tucked in his waistband. The victim, who had seen guns before but had never handled one, testified she immediately saw that the pistol looked like a gun, and it made her scared. She 'assumed' the pistol was 'real' and handed over her pocketbook. When asked by defendant's trial attorney what the pistol was made of, the victim said: 'Probably metal because—I don't know. Wasn't wood, wasn't plastic. I don't know if it was plastic or metal. . . . He don't show it to me. He just do ' "this" to me [pulled up his shirt and displayed the pistol].' The victim then conceded that she could not say for certain whether it was 'a toy or real or not.' " (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1436.)

In affirming the defendant's conviction and the jury's concomitant "arming" findings, the *Monjaras* court concluded that the victim's testimony was sufficient circumstantial evidence to support both. (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1436.) The court noted, too, that the defendant's own words and conduct in the course of the offense itself supports the fact finder's determination that the weapon was "real." (*Id.* at pp. 1436-1437.)

In this regard, reasonable inferences could be drawn from what appellant said to support the arming findings. When appellant displayed his partially hidden weapon to Bodiford, he assured Bodiford that he was not there to hurt him, but to get what was his. This utterance provides the same corroboration found noteworthy in *Monjaras.*

In light of the foregoing, we have no hesitation in concluding that the firearm enhancements under sections 12022.5, subdivision (a)(1) and 12022.53, subdivision (b) alleged and found true by the jury, and appellant's separate conviction for being a felon in possession of a firearm under section 12021, subdivision (a)(1) (Count 2), were supported by substantial evidence.

# IV.

## DISPOSITION

The judgment and sentence imposed below are affirmed.

_____
RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
HUMES, J.