Filed 1/26/21  P. v. Miller CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DERRICK LANDON MILLER,<br><br>Defendant and Appellant. | C089590<br><br>(Super. Ct. No. 18FE022888) |

A jury found defendant Derrick Landon Miller guilty of assault with a firearm, making a criminal threat, and being a felon in possession of a firearm.  On appeal, he challenges the exclusion of evidence related to a prior conviction and the trial court's refusal to provide a pinpoint jury instruction.  We will affirm the judgment.

BACKGROUND

The victim was driving down a street one afternoon when defendant attempted to merge into his lane of traffic.  The victim did not allow defendant to merge, so defendant followed the victim before pulling in front of him.  Defendant got out of his car, pulled a gun from his waistband, put a magazine in the gun, and cocked it while walking towards

1

the victim's truck. He walked up to the truck window, pointed the gun at the victim's head, and said, "you don't do that shit out here in Sacramento. We'll blow your fucking brains out." Defendant pulled out another magazine and told the victim "he was going to unload that one in [the victim's] fucking head, as well." Defendant then got back in his car and drove away. The victim called 911 and was interviewed by a sheriff's deputy later that day. The victim identified defendant in a photographic lineup and at trial.

The prosecution charged defendant with assault with a firearm (Pen. Code, § 245, subd. (b))[1], making a criminal threat (§ 422), and being a felon in possession of a firearm (§ 29800, subd. (a)(1)). The prosecution further alleged defendant had personally used a firearm (§ 12022.5, subds. (a), (d)) with respect to the first two counts.

A.      *Defendant's Motion in Limine*

Defendant's chief argument at trial was that he had pointed an imitation gun at the victim, rather than a real firearm. Defendant filed a motion in limine to admit evidence of a prior conviction for brandishing an imitation firearm (§ 417.4). In the prior incident, which occurred approximately one year before the charged crimes, defendant was driving past an off-duty police officer and mouthed "what the fuck are you looking at" to the officer. The officer shook his head "in disgust," and defendant began waving what appeared to be a handgun while driving his car. Later that day, when defendant was pulled over and apprehended, an officer found a replica firearm in his car. Defendant pleaded no contest to brandishing an imitation firearm and was sentenced to serve 30 days in jail.

Defense counsel contended the prior conviction should be admitted because it showed identity, plan, and intent in that it demonstrated defendant intended to threaten the victim "with something that looks like a firearm, but is not actually a firearm." The

---

[1] Undesignated statutory references are to the Penal Code.

trial court denied defendant's motion, saying: "I don't find that its probative value is substantially outweighed by undue prejudice. [¶] I think again this goes to some sort of lack of common plan or scheme. I don't think identity is really an issue in this case, and I think with regard to intent, I do think it will require the jury to speculate as to what he had in this case based upon something that happened a few months ago prior to the incident in question." The court determined the conviction could be used for impeachment, however, if defendant testified.

### B.    Trial Proceedings

Both parties introduced testimony about the gun defendant used. The victim testified that although he was not an expert on firearms, he had seen BB guns and pellet guns and knew what they looked like. He also knew what a handgun magazine looked like and how it looked to rack the slide of a handgun. The victim testified that when defendant was walking towards him and cocked the gun, the victim heard a "metal on metal" sound. He did not remember at trial whether the second magazine defendant pulled out was loaded, but did recall that he told the deputy who responded to the incident that both magazines were loaded. On cross-examination, the victim admitted he later told an investigator from the public defender's office that he did not know whether the firearm was loaded, but explained he believed his initial statement to the responding deputy was more accurate.

Deputy Jonathan Guibord, the deputy who initially interviewed the victim, testified the victim told him he had seen bullets in the magazine. District attorney investigator William Hutto testified as an expert in firearm recognition and discussed the characteristics of real firearms. In particular, he explained bullets in a semiautomatic firearm are contained in magazines that are loaded into the handle of the firearm; you would rack the slide on the firearm to load a round from the magazine into the firearm, and racking the slide creates a specific metal on metal sliding sound. Replica guns would not have bullets contained in a magazine or magazine-like cartridge, the rounds for a

3

replica gun would be very small, and the magazine of a real firearm would be clearly distinguishable from the magazine or magazine-like cartridge of a replica firearm.

On cross-examination, Hutto testified he had never seen a replica gun with rounds stored in a magazine, although he had seen replica guns with carbon dioxide cartridges that looked like magazines. He also explained that a replica firearm is not considered a "firearm" under California law because "it doesn't use powder." Rather, they use "compressed air or gas."

Public defender investigator Kevin Baker testified he had interviewed the victim and the victim had said he was not paying attention to the sound defendant's gun made when he racked the slide. The victim also told Baker he could not see any rounds in the magazines.

Defendant testified when he threatened the victim, he was using an airsoft BB gun that looked like a semi-automatic firearm. The gun used carbon dioxide cartridges that loaded into the handle. Defense counsel elicited testimony that defendant had been convicted of brandishing a replica firearm in a road rage incident and had other convictions for possession of brass knuckles, petty theft, and receipt of stolen property. The officers that arrested defendant did not find the replica firearm because he had thrown it away and he never told anyone it was a replica firearm.

C.     Jury Instructions

To instruct the jury on the assault with a firearm and felon in possession of a firearm charges, and the personal use of a firearm enhancements, the trial court used pattern jury instructions CALCRIM Nos. 875, 2510, and 3146. All three instructions contain a paragraph defining a firearm as "any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion."

Defendant filed a motion requesting a pinpoint jury instruction explaining "a BB gun is not a firearm, because toy guns don't qualify as a firearm, pellet guns, BB guns.

4

[¶] Because instead of an explosion or a combustion, they use the force of air pressure, gas pressure or spring-action to expel a projectile, and that's right out of People versus [Monjaras],[2] and that's an accurate statement of the law." The trial court noted *Monjaras* had not occurred in the context of jury instructions, so it "doesn't necessarily mean that's the instruction that you have to give," but promised to consider the issue.

Later that day, the court sent the parties a tentative jury instruction, which included a pinpoint instruction in CALCRIM No. 875 reading: "An imitation firearm is defined as 'any BB device, toy gun, replica or a firearm, or other device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm.' A realistic replica gun, a pellet gun, or a BB gun is not a gun as a matter of law if it does not fire a projectile by means of combustion." Early the next morning, defense counsel e-mailed a response to the draft instruction, saying it was "a true statement of the law," but that the last line was misleading because such guns do not fire projectiles by means of combustion. Instead, she proposed the last line be edited to read: "A realistic replica gun, a pellet gun, or a BB gun is not a firearm as a matter of law."

Later that morning, the court noted it had reviewed the e-mail, and reconsidered offering the pinpoint instruction, stating: "But rather, having thought about it, the Court is going to leave the standard language in 875 as-is.

"I believe the further language defining whether or not a replica gun or a BB gun or a pellet gun is a firearm because it doesn't fire a projectile by use of combustion or gas, I think that's a factual determination. I think for the Court to actually instruct the jury on that usurps the function of the jury as a fact-finder.

---

**2** *People v. Monjaras* (2008) 164 Cal.App.4th 1432.

"There was testimony from one of the witnesses, who was qualified as an expert in the use of firearms to that [effect], and I think it's for the jury to make that finding.

"I don't believe it's appropriate for the Court to actually give that and make that factual finding on its own, so . . .

"And I understand -- I will tell you this:

"I've read more cases with respect to this issue. Obviously the issue of replica guns versus real guns comes up in many cases. Not all of them are published.

"But in the unpublished cases that I saw, none of them dealt with additional jury instructions or pinpoint instructions. Most of them dealt with substantial evidence and whether or not there was substantial evidence to support a conviction.

"In all of those cases, the standard language was used without further elaboration or definition.

"So in light of that and the possibility of confusion, because I think if I'm going to instruct on the law, then I need to instruct on 16060, which defines the [imitation] firearm, but I also think that's confusing.

"So I am going to go ahead and strike the pinpoint language in 875."

The court ultimately delivered the pattern jury instructions without the pinpoint language. The jury found defendant guilty on all counts and found true the personal use of a firearm allegations.

DISCUSSION

I

*Admission of Prior Conviction*

Defendant argues the trial court erred in excluding evidence of his prior conviction for brandishing a replica firearm because the conviction was highly probative of his intent to threaten the victim with a replica firearm. He asserts its exclusion prevented him from presenting a complete defense and violated his due process rights. We disagree.

6

Evidence Code section 1101, subdivision (a) prohibits the admission of evidence of uncharged offenses to prove propensity or disposition to commit the charged crime. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393; *People v. Hendrix* (2013) 214 Cal.App.4th 216, 238.)  However, subdivision (b) of that section provides that such evidence is admissible "when relevant for a noncharacter purpose—that is, when it is relevant to prove some fact other than the defendant's criminal disposition, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake [of fact] or accident.' " (*Hendrix*, at p. 238.)  " 'Evidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense.  "In proving intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it." ' " (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 754.)

"To be relevant, an uncharged offense must tend logically, naturally and by reasonable inference to prove the issue(s) on which it is offered." (*People v. Robbins* (1988) 45 Cal.3d 867, 879.)  " ' "When reviewing the admission of evidence of other offenses, a court must consider:  (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant." ' " (*People v. Thompson* (2016) 1 Cal.5th 1043, 1114.)

Even where prior acts evidence is not excludable under Evidence Code section 1101, "the admission of such evidence ' " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.' " ' [Citations.] Under Evidence Code section 352, the probative value of a defendant's prior acts must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Davis* (2009) 46 Cal.4th 539, 602.)  " 'We review for abuse of discretion a trial

court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352.' " (*Ibid*.)

Here, defendant was charged with assault with a firearm, which does not have a specific intent requirement. (*People v. Golde* (2008) 163 Cal.App.4th 101, 108-109 [" 'Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state' "].) Defendant was also charged with making a criminal threat, which "does not require an intent to actually carry out the threatened crime. [Citation.] Instead, the defendant must intend for the victim to receive and understand the threat, and the threat must be such that it would cause a reasonable person to fear for his or her safety." (*People v. Wilson* (2010) 186 Cal.App.4th 789, 806.) Assuming defendant committed the charged acts, there was little evidence required of his intent because the acts themselves—pointing a gun at the victim and threatening to "blow [his] fucking brains out"—had a strong tendency to establish the requisite intent. That defendant had committed a similar act in the past would thus have only marginal value as to his intent. Moreover, the prior conviction would not make it more or less likely the gun defendant used in the charged crime was a replica unless the conviction was offered for an impermissible propensity purpose; in other words, to show defendant was using a replica firearm in this particular instance because he had previously used a replica firearm in similar circumstances.

Defendant's prior conviction, which involved defendant brandishing an imitation gun after a police officer shook his head at defendant, was not more inflammatory than the charged crime—the prior conviction was a misdemeanor, while the charged crimes were felonies. (§§ 245, subd. (b), 417.4, 422.) It would, however, be prejudicial in that it tended to show defendant had a short temper that was easily triggered while he was driving. And, as the trial court noted, it was highly likely the jury would attempt to use the conviction as propensity evidence to establish whether defendant was using a real

8

firearm in the charged crime. (*People v. Doolin* (2009) 45 Cal.4th 390, 439 [evidence is unduly prejudicial where there is a " 'substantial likelihood the jury will use it for an illegitimate purpose' "].) Given the limited probative value the evidence offered, the trial court did not abuse its discretion when it determined the potential for undue prejudice substantially outweighed the prior conviction's probative value. For similar reasons, defendant's due process rights were not violated. (See *People v. Kraft* (2000) 23 Cal.4th 978, 1035 ["Application of the ordinary rules of evidence generally does not impermissibly infringe on a capital defendant's constitutional rights"].)

Even were the exclusion error, it would be harmless. The court permitted the prior conviction to be used for impeachment purposes and defense counsel introduced testimony from defendant concerning the salient details of the prior conviction: that defendant had been convicted for brandishing an imitation firearm in a road rage incident. There was also substantial evidence the firearm used in the charged crime was real. The victim testified defendant was using a real firearm in the incident and observed several characteristics of the gun, including its appearance and the sound it made when it was cocked, that identified it as a real firearm. Although he acknowledged he was not a firearms expert, he had seen guns, including replica guns, and an expert witness testified the differences between a real and replica firearm magazine would be readily identifiable. Given this evidence, it is not reasonably probable the admission of any additional details of defendant's prior conviction would have led to a more favorable verdict. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103-1104 [exclusion of defense evidence analyzed under *Watson*[3] standard]; *People v. Malone* (1988) 47 Cal.3d 1, 22 [analyzing Evid. Code, § 1101, subd. (b) error under *Watson*].)

---

[3] *People v. Watson* (1956) 46 Cal.2d 818.

## II

### *Pinpoint Jury Instruction*

Defendant further asserts he was entitled to a pinpoint jury instruction explaining that BB guns, air guns, or other replica guns are not "firearms" as a matter of law. Because this is a correct statement of law, defendant claims, the trial court prejudicially erred when it used only the pattern jury instruction. We disagree.

" 'Upon proper request, a defendant has a right to an instruction pinpointing the theory of defense . . . if the theory proffered by the defendant is supported by substantial evidence' [citation], the instruction is a correct statement of law [citation], and the proposed instruction does not simply highlight specific evidence the defendant wishes the jury to consider [citation]." (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1174.)

The trial court " 'may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence.' " (*People v. Bivert* (2011) 52 Cal.4th 96, 120.) "[W]here standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 857.) "There is no error in a trial court's failing or refusing to instruct on one matter, unless the remaining instructions, considered as a whole, fail to cover the material issues raised at trial." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 277.)

We review claims of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "We look to the instructions as a whole and the entire record of trial, including arguments of counsel. [Citation.] Where reasonably possible, we interpret the instructions ' "to support the judgment rather than [to] defeat it." ' " (*People v. Mason* (2013) 218 Cal.App.4th 818, 825.)

Here, the trial court instructed the jury using jury instructions CALCRIM Nos. 875, 2510, and 3146, which all include a paragraph defining a firearm as "any device

10

designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion." This definition, which matches the statutory definition of "firearm," necessarily excludes any device, such as a pellet gun, BB gun, or air gun, that does not expel a projectile by the force of an explosion or other form of combustion. (§§ 12001, 16520, subd. (a) [" 'firearm' means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion"]; see *People v. Monjaras, supra*, 164 Cal.App.4th at p. 1435.) A further definition of the term which explicitly excludes such devices would thus be duplicative.

Nor do we agree with defendant's contention that the trial court's refusal to provide the pinpoint instruction deprived the jury of its ability to determine whether a BB gun constituted a firearm. The jury instruction provided, which defined a firearm by explaining its use of explosive force to propel a projectile, could be easily applied given the evidence introduced at trial and the closing arguments by both parties. Both defense and prosecution witnesses testified about the differing means of propulsion for real and replica firearms, and both counsel applied these facts to the firearm definition in closing. The provided jury instructions fully and adequately defined the term "firearm" for the jury and gave defendant ample ground to argue his gun was not real and thus could not meet the elements required by his charges. We conclude the trial court did not err by refusing to instruct the jury with defendant's proposed pinpoint instruction.

## III

### *Cumulative Error*

Defendant contends that his conviction should be reversed because cumulative error deprived him of a fair trial. Because we have " 'either rejected on the merits defendant's claims of error or have found assumed errors to be nonprejudicial[,] [w]e reach the same conclusion with respect to the cumulative effect of any [purported] errors.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1235-1236.)

11

## DISPOSITION

The judgment is affirmed.

/s/
RAYE, P. J.

We concur:

/s/
BLEASE, J.

/s/
ROBIE, J.