[No. C055746. Third Dist. July 21, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME JOSHUA MONJARAS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

Counsel

Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SCOTLAND, P. J.**—During a robbery committed late at night in the lighted parking lot of an apartment complex, defendant Jerome Joshua Monjaras told the female victim, "Bitch, give me your purse." He then pulled up his shirt and displayed the handle of a black pistol tucked in his waistband. After the victim turned over her wallet, defendant's accomplice pressed something against the victim's back and took her purse from her shoulder.

A jury convicted defendant of robbery and found he personally used a firearm within the meaning of Penal Code section 12022.53, subdivision (b), which applies to "any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion." (Pen. Code, § 12001, subd. (b); further section references are to the Penal Code unless otherwise specified.) He received a term of 10 years for the firearm use enhancement, consecutive to the term imposed for the robbery.

On appeal, defendant raises a contention that we thought had been put to rest but has resurfaced in a number of appeals before this court. Pointing out that the victim could not say whether the pistol in defendant's waistband was a gun or a toy, and making the dubious assertion that he "did not undertake any behavior suggesting that he would fire the weapon," defendant argues the "personal use allegation under section 12022.53, subdivision (b), was sustained merely on conjecture about the nature of the alleged weapon." Stated another way, he claims "there was no evidence of a gun presented to the jury to support an inference the weapon was real" and, thus, the firearm use enhancement must be reversed. We disagree.

Defendant was not engaged in a childhood game of cops and robbers; the robbery was real, and the evidence supports a reasonable inference that the pistol he used was a real firearm, not a toy. Our point in publishing this opinion is to say in no uncertain terms that a moribund claim like that raised by defendant has breathed its last breath.

## DISCUSSION

### I

█ Section 12022.53, subdivision (b) provides that "any person who, in the commission of a felony specified in subdivision (a) [including robbery], personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply." As used in that section, " 'firearm' means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion." (§ 12001, subd. (b).)

Thus, toy guns obviously do not qualify as a "firearm," nor do pellet guns or BB guns because, instead of explosion or other combustion, they use the force of air pressure, gas pressure, or spring action to expel a projectile. (§ 12001, subd. (g).)

The fact that an object used by a robber was a "firearm" can be established by direct or circumstantial evidence. (See *People v. Rodriguez* (1999) 20

Cal.4th 1, 11–12 [82 Cal.Rptr.2d 413, 971 P.2d 618]; *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 541 [91 Cal.Rptr.2d 778]; *People v. Dominguez* (1995) 38 Cal.App.4th 410, 421 [45 Cal.Rptr.2d 153].)

Most often, circumstantial evidence alone is used to prove the object was a firearm. This is so because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm or an imitation. And since the use of what appears to be a gun is such an effective way to persuade a person to part with personal property without the robber being caught in the act or soon thereafter, the object itself is usually not recovered by investigating officers.

Circumstantial evidence alone is sufficient to support a finding that an object used by a robber was a firearm. (*People v. Green* (1985) 166 Cal.App.3d 514, 516–517 & fn. 1 [212 Cal.Rptr. 451] [although the victim did not see the weapon, the fact that one of two culprits put a cold object to the victim's head after threatening to shoot her baby was sufficient circumstantial evidence that the culprit, later found with bullets in his pocket, personally used a firearm in robbing and raping the victim]; see also *People v. Maury* (2003) 30 Cal.4th 342, 396 [133 Cal.Rptr.2d 561, 68 P.3d 1] [inferences drawn from circumstantial evidence are sufficient to support a conviction]; *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698] ["circumstantial evidence is as sufficient as direct evidence to support a conviction"].)

Here, defendant demanded of the female victim, "Bitch, give me your purse," then pulled up his shirt and displayed the handle of a black pistol tucked in his waistband. The victim, who had seen guns before but had never handled one, testified she immediately saw that the pistol looked like a gun, and it made her scared. She "assumed" the pistol was "real" and handed over her pocketbook. When asked by defendant's trial attorney what the pistol was made of, the victim said: "Probably metal because—I don't know. Wasn't wood, wasn't plastic. I don't know if it was plastic or metal. . . . He don't show it to me. He just do 'this' to me [pulled up his shirt and displayed the pistol]." The victim then conceded that she could not say for certain whether it was "a toy or real or not."

 The jury was not required to give defendant the benefit of the victim's inability to say conclusively the pistol was a real firearm. This is so because "defendant's own words and conduct in the course of an offense may

support a rational fact finder's determination that he used a [firearm]." (*People v. Rodriguez, supra*, 20 Cal.4th at p. 13.) Indeed, even though for purposes of section 12022.53, subdivision (b), a firearm need not be loaded or even operable, "words and actions, in both verbally threatening and in displaying and aiming [a] gun at others, [can] fully support[] the jury's determination the gun was sufficiently operable [and loaded]." (*People v. Lochtefeld, supra*, 77 Cal.App.4th at p. 541.) Accordingly, jurors "may draw an inference from the circumstances surrounding the robbery that the gun was not a toy." (*People v. Aranda* (1965) 63 Cal.2d 518, 533 [47 Cal.Rptr. 353, 407 P.2d 265] (hereafter *Aranda*).)

Common sense and common experience illustrate that little has changed since 1927, when a court astutely observed that criminals "do not usually arm themselves with unloaded guns when they go out to commit robberies" (*People v. Hall* (1927) 87 Cal.App. 634, 635–636 [262 P. 50]). If anything, with the proliferation of handguns in America since 1927, robbery has become a more dangerous crime today because of the greater likelihood that victims will protect themselves by using deadly force against the robber. Consequently, it is all the more unlikely today that robbers use toy guns or unloaded or inoperable weapons.

■ As the old saying goes, "if it looks like a duck, and quacks like a duck, it's a duck." The pistol tucked into defendant's waistband looked like a firearm, and it in effect communicated that it was a firearm when defendant menacingly displayed it and ordered the victim to give him her purse. While it is conceivable that the pistol was a toy, the jury was entitled to take defendant at his word, so to speak, and infer from his conduct that the pistol was a real, loaded firearm and that he was prepared to shoot the victim with it if she did not comply with his demand. (See *Aranda, supra*, 63 Cal.2d at pp. 532, 533.)

Simply stated, when as here a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b). In other words, the victim's inability to say conclusively that the gun was real and not a toy does not create a reasonable doubt, as a matter of law, that the gun was a firearm. (See *Aranda, supra*, 63

Cal.2d at pp. 532–533 ["Testimony by witnesses who state that they saw what looked like a gun, even if they cannot identify the type or caliber, will suffice" to prove "the gun was not a toy"].)[1]

## II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] Defendant believes that *Aranda* helps not hurts his position. In his counsel's words, *Aranda* "strongly suggests that there was insufficient evidence on which to base the jury finding [that the pistol used by defendant was a real firearm]." This is so, he argues, because although *Aranda* held the circumstances of a robbery will support an inference that the "gun was not a toy," the court went on to say "[t]estimony to the effect that the defendant was flourishing the pistol or pointing it at the victim and was using threatening words or conduct indicating that he intended to fire it if his demands were not met would be evidence from which the inference [the gun was not a toy] could be drawn." (*Aranda, supra,* 63 Cal.2d at p. 533.) Such was not the case here, defendant asserts, because he "did not brandish the alleged weapon, did not point it at [the victim], [and] did not undertake any behavior suggesting that he would fire the weapon." This viewing of the facts through rose-colored glasses ignores the powerful message sent by a robber who simply lifts his shirt to let the victim know he has a gun. Only the most foolhardy victim would demand to be looking down the barrel before understanding that the robber who displays a gun intends to use it if necessary to get the goods. In any event, the passage from *Aranda* that defendant quotes cannot be read to establish a minimum standard of threatening conduct from which a jury can infer a gun is real.

Also unhelpful to defendant is another case upon which he relies, *People v. Brookins* (1989) 215 Cal.App.3d 1297 [264 Cal.Rptr. 240], which addressed whether Brookins's prior armed robbery conviction and his new offense made him an habitual offender within the meaning of section 667.7, subdivision (a). (215 Cal.App.3d at p. 1300.) To do so, the prior conviction had to be for robbery "involving the use of force or a deadly weapon" (§ 667.7, subd. (a)), which required proof that the firearm he used in the robbery was loaded or was used as a bludgeon. (215 Cal.App.3d at pp. 1300, 1304–1308.) The sole evidence introduced on the point was the abstract of judgment and other documents "showing only that [he] was convicted of robbery while personally using a firearm" (*id.* at p. 1300); *Brookins* held that this was insufficient because it "provided no proof the firearm was either loaded or used as a bludgeon." (*Id.* at p. 1305.) Defendant's effort to equate his case to *Brookins* fails. To qualify as a firearm within the meaning of section 12022.53, subdivision (b), the gun used by defendant did not have to be loaded or used as a bludgeon; it just had to be a real gun. Evidence of the nature of defendant's words and conduct in displaying the pistol was sufficient to establish that it was real, not a toy.

And contrary to defendant's claim, *People v. Dixon* (2007) 153 Cal.App.4th 985 [63 Cal.Rptr.3d 637] does not suggest there was no evidence in this case "about the true nature of a suspected weapon." There, as here, the guns used in the robbery were not recovered and witnesses were unfamiliar with guns and could say only that the robbers had what appeared to be guns. (*Id.* at p. 1001.) However, unlike here, "[t]here was evidence that the guns were BB guns or pellet guns and not real firearms." (*Id.* at p. 989.) Thus, the case is distinguishable.

[*] See footnote, *ante,* page 1432.

## DISPOSITION

The judgment is affirmed. The trial court is directed to amend the abstract of judgment to reflect that the trial court imposed and stayed a restitution fine of $200, not $420 (§ 1202.45), and to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

Nicholson, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 2008, S166445.