Filed 12/11/13  P. v. Argallon CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062524 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD232456) |
| FREDDIE JAMES ARGALLON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael T. Smyth, Judge.  Affirmed as modified with directions.

Raymond M. DiGuiseppe, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kimberley A. Donohue and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Freddie James Argallon appeals from a judgment convicting him of several counts of robbery (with true findings that he personally used a firearm), burglary, and possession

of a firearm by a felon.  He argues there is insufficient evidence to support a finding that he used a real firearm to establish the personal gun use enhancements.  We reject this contention.

Defendant also contends he was not awarded the correct amount of custody credits, and the abstract of judgment incorrectly describes one of his convictions.  The Attorney General concedes these errors.  We modify the judgment to correct the custody credits, and direct the superior court to correct the abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and an accomplice (Angel Zavala) were charged with robberies at three different locations (a taco shop and two donut shops), and a burglary at a 7-11 store.  The jury acquitted defendant of the taco shop robbery, and found him guilty of the other charges.  Because of the acquittal, we confine our summation of the facts to the two donut shop robberies and the 7-11 burglary.

### *Christy's Donut Shop Robbery on January 28*

At about 12:23 a.m. on January 28, 2011, Kien Ngo and her husband Chi Tang were robbed by two men at gunpoint at their donut shop (Christy's Donut Shop).  Before the robbery, a man had called the shop and asked what time it closed.  About 30 minutes later, the two robbers, who were wearing ski masks, entered the shop and jumped over the counter.

The first man who jumped over the counter grabbed Ngo, dragged her to the cash register, instructed her to open the register, and then grabbed the money from the register.  The man was pointing a gun at Ngo, which Ngo described as "maybe" being black.

2

Meanwhile, the second robber went to the back of the shop where Tang was working. Because the man had a gun in his hand, Tang "knew immediately that [they] were being robbed." The man grabbed Tang by the shirt, pointed his gun at Tang's chest and head, and ordered Tang to give him his wallet. The robber held the gun "[v]ery close" to Tang's head, about one foot away. Tang described the gun as silver. After Tang gave the man his wallet, the two robbers fled out the back door of the store.

*7-11 Burglary on January 28*

After the robbers left and the police arrived at Christy's Donut Shop, Tang had his son notify the credit card companies that his cards were stolen from his wallet. At about 12:40 a.m. that same night (January 28), one of the credit cards was used at a 7-11 store located about five and one-half miles from Christy's Donut Shop. When a detective viewed a surveillance video from the 7-11 store, he observed a man (later identified as defendant) enter the store and purchase beer. Police investigation revealed that the purchase was made with Tang's credit card, and defendant's driver's license was "swiped" through the cash register by the store clerk. The video also depicted Zavala entering the 7-11 store a few minutes after defendant's arrival.

*Yum Yum Donut Shop Robbery on February 8*

At about 2:17 a.m. on February 8, 2011, Norma and Norberto Quezada were working at Yum Yum Donuts when they were robbed at gunpoint by two men. Before the robbery, a male had called the shop and asked if it was open. Shortly thereafter, the two robbers ran into the shop and jumped over the counter.

3

The first man who jumped over the counter grabbed Norma by her arm, pulled her to the cash register, told her to open the register, and took all the money from the register and the tip jar. He had a gun which he held against her torso and which felt cold through her t-shirt. The man was wearing a dark cap or hat and a bandana covering his mouth. While Norma was trying to open the cash register, the robber bent down and removed his bandana because a car was passing by outside. At this point Norma saw his face, and at trial she identified the robber as Zavala.

Meanwhile, the second robber went to the back of the shop where Norberto was working. The robber pushed a gun into Norberto's back and demanded to know where the money was located. Norberto gave the robber all the money that was in a safe. There was about $5,000 in the safe, including numerous $100 and $2 bills. After stealing the money, the robbers fled out the back of the shop.

At trial, Norberto and Norma identified defendant as the second robber.[1] According to Norberto, the second robber was wearing a ski mask, but Norberto was able to see his face because the mask was lifted off his face when he first entered the shop.[2]

---

[1] Norma also identified Zavala and defendant at the preliminary hearing. When the police conducted a photo lineup which included Zavala's (but apparently not defendant's) photo, Norma could not make an identification. When asked at trial if it was easier for her to identify someone in person than through a photograph, she said yes.

[2] Norma thought the second robber was wearing a hat, but not a mask.

Norberto and Norma described the second robber's gun as silver in color.[3]  Norberto testified it was the kind of gun that "you put a [cartridge] on."

*Post-offense Searches*

After defendant was identified as a suspect, the police conducted a search of his personal items and his residence on February 8, 2011.  In defendant's wallet, they found $376 in cash, including a 2-dollar bill.  During a search of his home that same day, the police found in his bedroom closet ten 100-dollar bills folded up inside a shoe, and 15 2-dollar bills and his identification card inside a purse.  On a shelf in a kitchen cupboard, the police found a loaded gun wrapped in a plastic bag.  The gun was a 9-millimeter semiautomatic pistol with a magazine that is inserted into the gun.

After Zavala was identified as a suspect, the police searched his residence on February 17, 2011, and found three "air guns" or "BB guns" in the garage.  A detective testified that one of the guns was black; it was made out of "high density plastic"; and it looked like a real gun.

Information retrieved from defendant's and Zavala's cell phones tied them to the two donut shop robberies.  Numerous late night phone calls had been made from their cell phones to various eateries, and the caller identification feature had been blocked for these calls.  Zavala's cell phone showed these phone calls on January 27 and February 7, 2011, including a call to Christy Donut's Shop shortly before the January 28 robbery.

---

[3]     Norma said it was "kind of like silver colored."

Defendant's cell phone showed these calls on February 7 and 8, 2011, including a call to Yum Yum Donuts shortly before the February 8 robbery.

*Jury Verdicts and Sentence*

Defendant was charged with two counts of robbery for the Christy's Donut Shop robbery and two counts of robbery for the Yum Yum Donuts robbery, with personal gun use enhancements for each of these counts. He was also charged with burglary of the 7-11 store, and possession of a firearm by a felon. The jury found him guilty of these charges.[4]

Based on the current charges, plus a serious felony prior conviction and a strike prior conviction, the court sentenced defendant to 38 years 4 months in prison.

DISCUSSION

I. *Sufficiency of the Evidence that Defendant Used a Real Firearm*

Defendant argues the record does not support a finding that he used a real firearm during the robberies to establish the personal firearm use enhancement under Penal Code section 12022.53, subdivision (b).[5]

---

[4] Zavala was also charged with the two donut shop robberies and the burglary. He was charged with enhancements for being "a principal in the commission of a felony . . . if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm." (Pen. Code, § 12022, subd. (a)(1).) Zavala was convicted of these charges, plus he was convicted of the count based on the taco shop robbery as to which defendant was acquitted. Unlike defendant, Zavala was not charged with the personal gun use enhancement. (Pen. Code, § 12022.53, subd. (b).)

[5] Subsequent unspecified statutory references are to the Penal Code.
Section 12022.53, subdivision (b) requires a 10-year sentence enhancement for personal firearm use during specified felonies.

To qualify as a firearm under the section 12022.53 personal gun use enhancement, the gun must be a real gun in the sense that the gun's projectile is expelled by the force of an explosion or other form of combustion. (§§ 12001, 16520, subd. (a); *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 [toy guns, including BB or pellet guns, are not firearms for purposes of the personal gun use enhancement because the projectile is expelled by the force of air or gas pressure or spring action].) Circumstantial evidence may be used to prove that a defendant used a real gun, including facts showing that the defendant used what appeared to be a real gun in a threatening fashion. (*People v. Dominguez* (1995) 38 Cal.App.4th 410, 421-422; *Monjaras, supra*, at pp. 1435-1437; see *People v. Hunter* (2011) 202 Cal.App.4th 261, 278; *People v. Law* (2011) 195 Cal.App.4th 976, 984.)

On appeal, we review the entire record in the light most favorable to the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could find the allegations true beyond a reasonable doubt. (*People v. Dominquez, supra*, 38 Cal.App.4th at p. 421.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*Ibid*.) If the circumstances reasonably support the trier of fact's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*Ibid*.)

The record supports a finding that the gun used by defendant during the robberies was real. First, the jury could consider that defendant used the gun in a threatening manner that suggested it was real, and there was nothing to suggest the gun was not real.

7

During the robberies, the gun was pointed directly at the victims in a frightening manner that caused the victims to promptly comply with defendant's demands.

Second, a real gun was found at defendant's residence on the same date as the second robbery on February 8. The jury could reasonably infer that given the close temporal proximity between the second robbery and the presence of the gun at defendant's residence, this was the gun he used to commit the robberies.

Defendant raises a variety of fact-based challenges to the jury's gun use finding, including that there was no evidence that the gun at his residence was actually linked to the robberies or that he owned or touched it; the robbery victims described the second robber's gun as silver whereas the gun at his residence was "black to blackish-grey"; and he made no statements during the robberies suggesting that he had the capability to shoot or kill the victims. Although these were relevant factors for the jury to consider, none of them defeat the sufficiency of the evidence to support the jury's finding that he used a real gun. As stated, a finding that a gun was real can be based on circumstantial evidence. Here, the threatening manner in which defendant used the gun during the robberies, and the presence of a real gun at his home on the date of the second robbery, support an inference that he used a real gun.

Further, we have examined photographs of the gun found at defendant's residence that were submitted into evidence, and are satisfied that in the heat of a quick-paced robbery the gun depicted in the photos could reasonably be viewed as silver. The photographs show a dark, metallic-looking gun with silver-looking components. Also, a prosecution witness described (and a photograph depicts) the gun found at defendant's

8

residence as a semiautomatic weapon with a magazine that "gets inserted," which is consistent with victim Norberto's description of the gun as having a cartridge that is "put . . . on." The jury could reasonably conclude defendant used a real gun during the robberies based on a consideration of all the circumstances, including his use of a silver-looking gun with a cartridge to intimidate the victims, and the presence of a real gun similar in appearance at his home close in time to the second robbery.

Defendant asserts the jury's personal gun use finding must be reversed because codefendant Zavala was not charged with this enhancement even though he also used a real-appearing gun in a threatening manner during the robberies. (See fn. 4, *ante*.) During closing argument, the prosecutor told the jury that even though Zavala "very well could have been using a real gun," he was not charged with the personal gun use enhancement because a BB gun that looked like a real gun was found at his residence. Defendant's challenge to the personal gun use finding based on the manner in which Zavala was charged is unavailing. For purposes of substantial evidence review, the only relevant inquiry is whether the personal gun use enhancement is supported for defendant, which it is. The fact that the prosecution exercised its discretion to charge Zavala in a more lenient fashion does not provide a basis to reverse a finding that is supported by the evidentiary record.

## II. *Corrections*

The Attorney General agrees with defendant's contention that there are two errors that should be corrected.

First, defendant was awarded 553 days of custody credits, whereas he should have been awarded 576 days. He was arrested on February 8, 2011 and sentenced on June 22, 2012, which entitles him to 501 days of actual custody credits and 75 days of conduct credits under section 2933.1 (15 per cent of 501), for a total of 576 days.

Second, the abstract of judgment states that his count 7 conviction was for robbery, whereas it was for possession of a firearm by a felon (former § 12021, subd. (a)(1)).

DISPOSITION

The judgment is modified to award defendant 576 days of custody credits, consisting of 501 days of actual custody credits and 75 days of conduct credits under section 2933.1. As so modified, the judgment is affirmed.

The superior court shall amend the abstract of judgment to state (1) the correct amount of custody credits, and (2) the count 7 conviction is for possession of a firearm by a felon (§ 12021, subd. (a)(1)). The superior court shall forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.