Filed 5/27/21  P. v. Acuna CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD DOMINIK ALEXIS ACUNA,<br><br>    Defendant and Appellant. | 2d Crim. No. B307813<br>(Super. Ct. No. 20F-02208)<br>(San Luis Obispo County) |

Edward Dominik Acuna appeals from the judgment after a jury convicted him of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1); count 4), dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2); count 5), and disobeying a court order (§ 273.6, subd. (a); count 9).  The trial court sentenced him to two years eight months in state prison

---

[1] Further unspecified statutory references are to the Penal Code.

(two years for count 4, a consecutive eight months for count 5, and the sentence for count 9 stayed).

Acuna contends (1) there was insufficient evidence to support his conviction for possessing a firearm; and (2) he is entitled to additional presentence credits. We modify the judgment to award nine additional days of presentence credit, but otherwise affirm.

## FACTUAL AND PROCEDURAL HISTORY

Acuna's girlfriend, M.V., reported that he pointed a gun at her during a fight. When a police officer responded, M.V. told the officer that Acuna pulled the gun from his pocket and pointed it at her. She said she heard a click when Acuna took the safety off the gun. She was scared and did not know if he was going to shoot her. M.V. described the gun as small and black. She was "pretty sure" it was real. She said Acuna had purchased the gun for $500 about a month before the incident.

During a second interview at the police station, M.V. showed the officer a picture message on her cell phone from Acuna. The photograph showed Acuna holding a gun. A firearms expert opined that the gun was "consistent in appearance" with a Smith & Wesson handgun.

The day after the incident, another officer met M.V. and her friend. The friend told the officer that Acuna messaged her and had a "Face Time" video call with her. During the Face Time call, Acuna said that "he had gotten rid of the firearm." In the text messages, Acuna wrote: "They're going to try to cross-examine [M.V. to] get her to testify . . . Just make sure she tells them she was just being dramatic to try to get my attention or something. Have [M.V.] make it summin [*sic*] up and make sure she sticks to it."

The officer accompanied M.V. inside her apartment. When asked where Acuna stored his gun, M.V. grabbed a Penal Code book off a shelf and said that Acuna stored his gun inside the book. The inside of the book had a "cutout" in the shape of a gun.

After Acuna was arrested, he made a jail phone call to M.V., during which he said he was "hopin' because they didn't find no strap on me or whatever and since that's basically what the fuck I'm in here for because I supposedly, you know what I'm sayin'? Allegedly that, that since they don't have that that the case is probably gonna be dismissed." An officer testified that "strap" meant a firearm.

A few weeks later, a police officer saw M.V. and Acuna together. She said she wanted to be with him. At trial, she recanted many of her previous statements and said she had called the police because she believed Acuna was cheating on her and wanted to get him in trouble. She testified that the gun inside the Penal Code book was a "prop gun."

## DISCUSSION

### *Substantial Evidence*

Acuna contends his firearm possession conviction must be reversed because there was insufficient evidence the firearm was real. We disagree.

We review for substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) Substantial evidence is evidence that is "reasonable, credible, and of solid value." (*Id*. at p. 578.) We view the whole record in the light most favorable to the judgment and do not reweigh the evidence or reevaluate the credibility of witnesses.

3

(*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  A judgment will be reversed only if there is no substantial evidence to support the verdict under any hypothesis.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Pursuant to section 29800, subdivision (a)(1), a "person who has been convicted of a felony . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."  A firearm is a "device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion."  (§ 16520, subd. (a).)  Toy guns do not qualify.  (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 (*Monjaras*); see also *In re Jose A.* (1992) 5 Cal.App.4th 697, 700-701 [pellet or BB guns do not qualify as firearms].)

"Most often, circumstantial evidence alone is used to prove [an] object was a firearm.  This is so because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm or an imitation."  Moreover, "the object itself is usually not recovered by investigating officers."  (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1436.)

Accordingly, "[c]ircumstantial evidence alone is sufficient to support a finding that an object used by a [criminal perpetrator] was a firearm."  (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1436.)  When a defendant commits a crime with an object that looks like a gun, "the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was

4

a firearm." (*Id*. at p. 1437.) The "victim's inability to say conclusively that the gun was real . . . does not create a reasonable doubt, as a matter of law, that the gun was a firearm." (*Ibid*.)

Here, substantial evidence supports the finding that Acuna possessed a firearm. M.V. told the officer that Acuna paid $500 for the gun, she was "pretty sure" it was real, and the gun clicked when he took the safety off. A firearms expert testified that the object was "consistent in appearance" with a Smith & Wesson handgun.

Acuna's conduct and words further support the finding. During an argument, Acuna pulled out the gun from his pocket, pointed it at M.V., and took the safety off. His action scared M.V., who believed he might shoot her. (Compare with *Monjaras*, *supra*, 164 Cal.App.4th at p. 1436 [substantial evidence that an object was a real firearm where during a robbery, the defendant lifted his shirt to display a pistol tucked into his waistband and the victim testified that it looked like a real gun and frightened her].) Acuna told M.V.'s friend that "he had gotten rid of the firearm" and told M.V. that he was hoping the case would be dismissed because the police did not find a "strap."

In arguing that the evidence was insufficient, Acuna asserts that no witness "affirmatively testified" the gun was real and highlights that M.V. testified at trial that the gun was a "prop gun." But, the jury could have reasonably rejected M.V.'s trial testimony and accepted her earlier statements to the police officer. (*People v. Maxwell* (1979) 94 Cal.App.3d 562, 576.) Substantial evidence supports the jury's finding.

### *Presentence Custody Credit*

Acuna contends he is entitled to additional days of presentence credit.  We agree.

"In all felony and misdemeanor convictions, . . . when the defendant has been in custody, including, but not limited to, any time spent in a jail, . . . all days of custody of the defendant . . . shall be credited upon [their] term of imprisonment."  (§ 2900.5, subd. (a).)  A day in custody includes the day of the arrest.  (*Ibid.*; *People v. Smith* (1989) 211 Cal.App.3d 523, 526.)

Here, Acuna was awarded a total of 356 days of presentence custody credit (178 days of actual custody credit and 178 days of conduct credit) for the period between March 30, 2020 to September 23, 2020.  However, the record reflects Acuna was initially arrested on March 12 and released on bail on March 16.  He was arrested again on March 30 after his bail was increased.  He is therefore entitled to an additional five days of actual custody credit (a total of 183 days of actual custody).  And, pursuant to section 4019, subdivision (f), Acuna is entitled to four days for "every two days spent in actual custody," i.e., 182 days of conduct credit, for a total of 365 days of presentence credit.

The Attorney General argues that Acuna is not entitled to additional credit because the record is "insufficient" to show he was booked into jail on March 12.  (See *People v. Ravaux* (2006) 142 Cal.App.4th 914, 919-921 [custody credits begin to accrue when a defendant is booked in a residential detention facility and "not for merely being in the custody of police"].)  But, the record shows that Acuna was arrested at 1:14 p.m. on March 12 and was "later transported to the San Luis Obispo County Jail."  He is therefore entitled to custody credits beginning the

date of his arrest (on March 12) through the time he posted bail (on March 16).

## DISPOSITION

The judgment is modified to award nine additional days of presentence credit. (§ 1260.) The clerk of the court shall amend the abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

7

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.