Filed 7/20/22  P. v. Munoz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075862 |
| v. | (Super.Ct.No. SWF1907316) |
| FRANCISCO ROCKY MUNOZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Francisco Rocky Munoz was tried and convicted of using a gun to rob a CVS Pharmacy (CVS).  In this appeal, he argues that the trial court erred in

1

its jury instructions regarding evidence of a prior robbery conviction. He further argues that the evidence was insufficient to support the jury's finding that he used a gun to commit the robbery. We affirm the judgment.[1]

## I. BACKGROUND

Munoz was charged with robbing a CVS store in Lake Elsinore, California, on the evening of November 11, 2018. An employee observed the robber enter the store, pick up a soda, and begin "wandering" around. The robber also got a lottery ticket from a machine in the store. After some time, the robber approached the register at the front of the store, took a sip from the soda, and had the employee verify if the lottery ticket was a winner (it was not). The robber then lifted his shirt, and the employee "saw a gun tucked into his pants." The robber told the employee that he had a gun, encouraged the employee to remain calm, and implied that the employee hand over the money from the register by saying "You know what to do." The robber directed the employee to empty a second register, but that register had no money in it. The robber then directed the employee to lie down at the back of the store, and then left with about $250.

Surveillance video of the robbery was played for the jury, though the video quality was poor. Two eyewitnesses (the employee who spoke with the robber, and another who returned from a break during the robbery) were unable to pick out Munoz with certainty from photo lineups, though both included him in narrowed-down sets of two possible

---

[1] Undesignated statutory references are to the Penal Code.

matches. When the robber left the store, however, he left behind the soda bottle. Fingerprints and DNA recovered from the bottle matched to Munoz.

Munoz testified in his defense. He admitted that he had been at the CVS on November 11, 2018, but denied he was the robber. According to Munoz, he went to the store to meet up with his girlfriend (whom he declined to identify). He proceeded inside the CVS because he noticed "somebody pulling into the parking lot that [he] was trying to avoid," and he wanted to prevent an altercation.[2] While in the store, he picked up a bottle of soda. After a while, believing the person had left, Munoz exited the store again, taking the soda (possibly without paying for it). As he exited the store, he took a sip of the soda, then screwed the cap back on. As he walked away, however, the person he was trying to avoid drove by, slowing down as he passed Munoz and calling out to him, using Munoz's nickname ("What's up, Rock"). Munoz responded by throwing the soda bottle at the person through the open window of the car. According to Munoz, he "didn't see that person again personally until probably about March of the following year." He identified the person as the one who committed the CVS robbery, stating that what looked like a "smudge" on the poor quality surveillance video was actually tattoos on the person's face and neck.

During Munoz's testimony, he admitted that he had a 1994 conviction for robbery that involved use of a gun. He stated: "When I was younger, I think I was about 22, I

---

[2] On cross-examination, Munoz elaborated that the dispute between them arose from the person being a "child molester." Munoz declined to identify the person by name for two reasons: "I'm not a rat. And the other reason is, I hope to finish him myself."

robbed a market with a gun. It was a BB gun." Munoz denied having a gun or anything that looked like a gun with him on November 11, 2018.

The jury found Munoz guilty of one count of robbery (§ 211) and found true that he had personally used a firearm in committing the robbery (§§ 12022.53, subd. (b)). The trial court found true that Munoz had a serious felony prior (§ 667.5, subd. (a)(1)) and a strike prior (§§ 667.5, subds. (c) & (e)(1) & 1170.12, subd. (c)(1)). The court sentenced Munoz to a determinate term of 25 years, consisting of the upper term of five years for the robbery, doubled as a second strike, plus ten years for the gun use enhancement and five years for the prior serious felony enhancement.[3]

## II. DISCUSSION

A. *Jury Instructions*

The jury heard evidence of Munoz's 1994 robbery conviction, including not only prosecution evidence but also Munoz's own testimony. Using language derived from CALCRIM No. 375, the trial court instructed the jury that the permissible uses for such evidence included the "limited purpose of deciding whether" he "acted with the intent required to prove the offense alleged" or his "alleged actions were not the result of mistake or accident." Munoz concedes the 1994 conviction was properly admitted to show intent. He contends, however, that the instruction regarding mistake or accident

---

[3] Six alleged prison prior enhancements (§ 667.5, subd. (b)) were dismissed before sentencing. The trial court stayed punishment for a prior violent felony conviction that resulted in a prison sentence (§ 667.5, subd. (a)).

4

was inappropriate, and "invite[d] an irrational inference." We find the argument unpersuasive.

The trial court has a sua sponte duty to instruct the jury on the general principles of law that are necessary for the jury's understanding of the case. (*People v. Mayfield* (1997) 14 Cal.4th 668, 773 (*Mayfield*), overruled on other grounds by *People v. Scott* (2015) 61 Cal.4th 363.) Once the trial court adequately instructs the jury on the law, it has no duty to give clarifying or amplifying instructions absent a request. (*Mayfield*, at p. 778.) When instructional error is claimed, our inquiry is whether "in the context of the instructions as a whole and the trial record, there is a reasonable likelihood that the jury was misled to defendant's prejudice. Also, we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." (*People v. O'Malley* (2016) 62 Cal.4th 944, 991 [cleaned up].)

"Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition." (*People v. Kipp* (1998) 18 Cal.4th 349, 369 (*Kipp*).) Such evidence is admissible, however, "to prove some material fact at issue," including, as relevant here, "absence of mistake or accident." (*People v. Cage* (2015) 62 Cal.4th 256, 273; see Evid. Code, § 1101.) "In this context, the word 'accident' is used in two different senses: 'One sense comes into play when the defendant admits performing an act but claims that he or she did so with innocent intent.' [ . . .] In the second sense, 'the defendant denies committing [the] actus reus.'" (*People v. Spector* (2011) 194

5

Cal.App.4th 1335, 1374 (*Spector*).)  The second sense, applicable in this case, also includes two aspects:  (1) where the defendant "concede[s] that there was a loss . . . but . . . claims that the cause of the casualty was not human agency'" (*ibid.*), and (2) where the defendant claims someone else actually committed the offense, even though the defendant has "'become enmeshed in suspicious circumstances'" (*id.* at p. 1379).  An example of this last situation is *People v. Kelly* (2007) 42 Cal.4th 763, where our Supreme Court commented:  "It would have been a remarkable coincidence if, shortly after defendant violently assaulted two women he befriended at the fitness center, some different person happened to use that same apartment to assault another woman defendant had befriended at the fitness center."  (*Id.* at p. 786.)

"The theory of logical relevance" for such evidence of offenses other than those currently charged "has been called the 'doctrine of chances.'"  (*Spector*, *supra*, 194 Cal.App.4th at p. 1378.)  The underlying principle of the doctrine of chances is that "'[i]nnocent persons sometimes accidentally become enmeshed in suspicious circumstances, but it is objectively unlikely that will happen over and over again by random chance.'"  (*Id.* at p. 1379.)  "'The doctrine does not ask the jurors to utilize the defendant's propensity as the basis for a prediction of conduct on the alleged occasion. Instead, the doctrine asks the jurors to consider the objective improbability of a coincidence in assessing the plausibility of a defendant's claim that a loss was the product of an accident or that he or she was accidentally enmeshed in suspicious circumstances.'"  (*Ibid.*)  On appeal, the trial court's determination of whether the evidence is admissible in

6

the circumstances of a particular case is "essentially a determination of relevance . . . reviewed for abuse of discretion." (*Kipp*, *supra*, 18 Cal.4th at p. 369.)

We find no abuse of discretion in the trial court's decision that Munoz's 1994 robbery offense was relevant as evidence of absence of mistake or accident. Munoz, through testimony and argument, posited the existence of reasonable doubt by suggesting it could have been a series of innocent coincidences that led him to be at the scene of the robbery, and that caused his DNA and fingerprints to be on a soda bottle left on the store counter by the robber. Under the doctrine of chances, Munoz's 1994 conviction for using a gun to rob a store was relevant evidence that bears on the plausibility of that claim. The trial court therefore was correct to instruct the jury that it could consider Munoz's 1994 conviction as evidence that his "alleged actions"—specifically, going to the CVS when he did, and leaving DNA and fingerprints on a bottle later abandoned in the store by the robber—were not the "result of mistake or accident" (in the sense of being a series of innocent actions unintentionally leading to suspicious circumstances), but that he was there to commit the robbery.

Thus, we are not persuaded that the instructions invited the jury to make any irrational inferences and reject Munoz's arguments to the contrary. Further, to the extent the concept of mistake or accident could have been more precisely defined for the jury, it was incumbent on Munoz to request such a clarification. (See *Mayfield*, *supra*, 14 Cal.4th at p. 778.) He did not do so. Additionally, because we find no error, we need not address the parties' arguments regarding prejudice.

B. *Gun Use Enhancement*

Munoz argues that no substantial evidence supports the jury's finding that the object the robber—who the jury decided was indeed Munoz, rejecting his testimony to the contrary—displayed during the robbery was a gun, rather than a fake gun or only a gun handle. We disagree.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*Ibid.*) "'We do not reweigh evidence or reevaluate a witness's credibility.'" (*People v. Alexander* (2010) 49 Cal.4th 846, 917.)

A personal gun use enhancement under section 12022.53, subdivision (b), requires evidence that the defendant used a "firearm" in the commission of the offense. (§ 12022.53, subd. (b).) The term "firearm," within the meaning of that code section, "means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." (§ 16520, subd. (a); see § 12001 [definition of firearm in § 16500, subd. (a) applies to § 12022.53, subd. (b) enhancement].) It does not matter if the firearm was loaded or operable. (§ 12022.53, subd. (b).) Toy guns, pellet guns, and BB guns, however, do not qualify as

8

firearms for purposes of the personal gun use enhancement. (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 (*Monjaras*).) "Circumstantial evidence alone is sufficient to support a finding that an object used by a robber was a firearm." (*Id.* at p. 1436.)

The Court of Appeal in *Monjaras*, *supra*, 164 Cal.App.4th at p. 1432, rejected a substantial evidence challenge similar to the one Munoz raises. In *Monjaras*, the defendant told the victim to give him her purse, with an added expletive, and he pulled up his shirt to display the handle of a pistol tucked into his waistband. (*Id.* at p. 1434.) The victim could not say whether the pistol was a toy or a real gun, or even whether it was plastic or metal. (*Id.* at p. 1436.) The Court of Appeal nevertheless upheld the jury's conclusion that the defendant had used a gun in committing the robbery: "Simply stated, when as here a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b)." (*Monjaras*, at pp. 1437-1438.) Put another way, "the jury was entitled to take the defendant at his word, so to speak, and infer from his conduct that the pistol was a real, loaded firearm . . . ." (*Id.* at p. 1437.)

The same reasoning applies here. The store employee testified that the robber lifted his shirt to display what appeared to be a pistol tucked into his waistband and stated that he had a gun. The employee reasonably took the robber at his word. Under *Monjaras* and similar authority, the jury was entitled to do the same.

9

## III.  DISPOSITION

The judgment is affirmed.

NOT TO PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MILLER
Acting P. J.

MENETREZ
J.