Filed 7/16/25  P. v. Smart CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADRION TREVOR SMART,<br><br>    Defendant and Appellant. | F088378<br><br>(Super. Ct. No. BF183731A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian P. Whitney and Joseph M. Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Adrion Trevor Smart appeals from a resentencing proceeding following remand in a prior appeal. Appellant argues the trial court abused its discretion by failing to strike certain firearm enhancements, and his trial counsel was ineffective for failing to alert the trial court as to the provisions of Penal Code section 1385, subdivision (c).[1] Finally, appellant requests the abstract of judgment be corrected to reflect the middle term on his carjacking conviction. We affirm the conviction and remand with direction to correct the abstract of judgment.

## STATEMENT OF FACTS

This court's prior nonpublished opinion details the following facts underlying appellant's conviction.

> "On January 1, 2021, at around 8:00 p.m., John Doe, a rideshare driver at the time, was working and driving his black Toyota Prius. Doe picked up a rider who was supposed to be 'Chris,' but was later identified as appellant. Appellant told Doe that 'Chris' was his friend. Appellant placed his bag in the trunk, then sat in the backseat with a box and a backpack.

> "Doe asked appellant how his night was going, and appellant answered that he was stressed out and needed sex. During the remainder of the ride, appellant asked Doe if he knew where he could find people to have sex with and alluded to having oral sex with Doe. Appellant also reached forward and touched Doe's arm without consent. Appellant then told Doe he wanted to work as an escort and again alluded to 'practic[ing]' oral sex with Doe. Around this time, Doe arrived at appellant's destination on University Avenue.

> "Doe went outside to open the trunk when appellant walked up and asked Doe to take him to a clothing store. Doe declined, even when appellant offered cash. Appellant then walked to the backseat, opened his bag, pulled out a black gun with silver on the butt and pointed it at Doe. Appellant ordered Doe to get back in the driver's seat, and appellant sat in the passenger seat. Appellant stuck the gun into Doe's ribcage and told him to recline his seat.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

"Doe kept a camera videotaping the inside of his car on his rearview mirror. Appellant tore the camera off the mirror and broke it. He then took one of Doe's two phones off of the dashboard and the keys from Doe's pocket. Finally, appellant rifled through Doe's glove compartment, where he found Doe's IRS forms, registration, and insurance information. Appellant told Doe that if Doe called the police, appellant had his keys and his address and was going to hurt his family. With the gun still pressed against Doe's ribcage, appellant told Doe to drive.

"During the drive, Doe's second phone dinged, indicating he was receiving a ride request. Appellant demanded Doe open the phone, and when Doe said he was not able to, appellant threw it out of the car. Appellant told Doe to park next to a cemetery. Appellant, still holding the gun against Doe's ribcage, told Doe to pull down his pants. Doe complied.

"Appellant began touching Doe's penis with his hand and told Doe to '"Make it hard."' Doe, who is not a native English speaker, said he did not know what appellant meant. Appellant then ordered Doe to continue driving, but would not let Doe sit up or to pull his pants up. After driving a short distance, appellant told Doe to stop again, and asked Doe where his wallet was. Doe said it fell next to the driver's seat, and appellant retrieved it. Doe begged appellant not to hurt him and offered to go to the ATM to get more money. Appellant refused.

"Appellant turned the car's headlights off and began to orally copulate Doe. Appellant stopped multiple times and ordered Doe to make his penis hard, all while keeping the gun pressed against Doe's ribcage. When Doe could not comply, appellant told him '"This is the last chance."' Doe again said he could not, and said he felt that it was his 'last day.'

"Doe saw a person in front of a nearby house, turned on the car and attempted to crash it to get their attention. Appellant pressed a button that put the car in park in response. Appellant then began to beat Doe with the gun, hitting him on the nose, eye, chest, and head. Doe lost consciousness, and appellant threw him out of the car and drove away.

"Doe woke up in the street and recovered the camera appellant threw out of the car. Doe was then able to get assistance from the person he had previously seen at a nearby house. While the homeowner was calling 911, appellant again drove by, slowly, in Doe's car. Doe believed appellant was looking for him. Ultimately, Doe spoke with the responding officers. He was subsequently transported to the hospital where he required multiple stitches, staples and surgeries to treat his injuries. A DNA sample was also taken from Doe's mouth and penis.

3.

"Later that night, Officer Tristan Braughton of the Bakersfield Police Department located Doe's car and followed it to the apartment complex where Doe and his family lived. Ultimately, when Braughton attempted to pull over appellant, appellant fled in Doe's car. During the ensuing chase, appellant drove with the car's lights off, drove 80 miles per hour in a 45 mile-per-hour zone, drove in the oncoming traffic lane, ran two stop signs and a red light. The chase ended when appellant crashed the car into a trailer.

"Appellant was arrested and his DNA sample was obtained. Testing of the DNA revealed the presence of appellant's DNA on Doe's penis. Detective Jesse Perez of the Bakersfield Police Department also interviewed appellant. Appellant denied hitting the victim and said that if he had hit the victim, he would not have stopped until the victim was dead because of appellant's rage issues.

"After Doe's car was recovered, officers located inside the car motor vehicle paperwork in appellant's name, appellant's driver's license, and bloodstained clothing that appellant was wearing when he assaulted Doe and took his car. A gun was not located inside Doe's car." (*People v. Smart* (Aug. 24, 2023, F083799) [nonpub. opn.] [2023 Cal.App. Unpub. Lexis, *3–8] (*Smart*).)

On September 30, 2021, a jury found appellant guilty of forcible oral copulation (§ 287, subd. (c)(2)(A); count 1), forcible kidnapping to commit oral copulation (§ 209, subd. (b)(1); count 2), carjacking (§ 215, subd. (a); count 3), making criminal threats (§ 422; count 4), first degree robbery (§ 212.5, subd. (a); count 5), and evasion with willful or wanton disregard for the safety of persons or property (Veh. Code, § 2800.2; count 6). The jury found true the "one strike" allegations as to count 1 pursuant to section 667.61: appellant kidnapped the victim during the commission of the offense and the movement substantially increased the risk of harm (*id.*, subd. (d)(2)), appellant personally inflicted great bodily injury on the victim during the commission of the offense (*id.*, subd. (d)(6)), appellant kidnapped the victim during the commission of the offense (*id.*, subd. (e)(1)), and appellant personally used a firearm during the commission of the offense (*id.*, subd. (e)(3)). The jury further found appellant personally used a firearm during the commission of counts 2–5.

On January 5, 2022, appellant was sentenced to 25 years to life on count 1, seven years to life on count 2, the upper term of nine years on count 3, one-third the middle term of 16 months on count 5, and one-third the middle term of eight months on count 6. Appellant was further sentenced to 10 years for the gun enhancement on counts 2 and 3, and three years four months for the gun enhancement on count 5. Appellant's aggregate sentence was 25 years to life, plus seven years to life, plus 34 years four months.

## PROCEDURAL HISTORY

Following an appeal from the judgment of conviction, this court vacated appellant's sentence and remanded the matter for a new sentencing hearing. (*Smart, supra*, F083799 [2023 Cal.App. Unpub. Lexis 5038, *32].) Because appellant had been sentenced to the upper term on count 3, this court directed the trial court to resentence appellant consistent with the recent amendments to section 1170, subdivision (b)(1), which made the middle term the presumptive term of imprisonment. (*Ibid.*)

Following remand, appellant filed a sentencing statement and objections to imposing an upper term sentence. Appellant requested the court strike the section 12022.53, subdivision (b), firearm enhancements because evidence at trial suggested the gun appellant used was not real. Appellant further argued concurrent sentences would be appropriate, and the low or middle term should be imposed as to counts 3, 5, and 6.

On July 11, 2024, the trial court resentenced appellant. Appellant requested the low term on count 3, and that the counts run concurrently. Appellant also requested the trial court dismiss the section 12022.53, subdivision (b), enhancements pursuant to its discretion and in the interest of justice, because there was strong evidence the gun was not a real gun.

The trial court sentenced appellant to 25 years to life on count 1, life with a minimum eligible parole date of seven years on count 2 with a 10-year section 12022.53, subdivision (b), enhancement, the middle term of five years on count 3 with a 10-year

section 12022.53, subdivision (b), enhancement, one third the middle term of 16 months on count 5 with a three year four month section 12022.53, subdivision (b), enhancement, and one-third the middle term of eight months on count 6, all to run consecutively. The aggregate term imposed was 25 years to life, plus life with a minimum parole eligibility date of seven years, plus 30 years four months.

## DISCUSSION

### I. The Trial Court Did Not Abuse Its Discretion Declining to Strike the Firearm Enhancements

Appellant argues the trial court abused its discretion in failing to strike the section 12022.53, subdivision (b,) enhancements, because several of the mitigating circumstances listed in section 1385, subdivision (c)(2), were present or proven. We find the argument forfeited and, in the alternative, find no error.

### A. Legal Standard

Section 1385, subdivision (c)(1), states a "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2), directs "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

Appellant argues the mitigating circumstances applicable to this case are that an "application of an enhancement could result in a sentence of over 20 years," pursuant to section 1385, subdivision (c)(2)(C), and "[t]hough a firearm was used in the current

6.

offense, it was inoperable or unloaded" pursuant to section 1385, subdivision (c)(2)(I). "A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*People v. Jones* (2009) 178 Cal.App.4th 853, 860.)

"'To prove an abuse of discretion, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citation.] To meet this burden, the defendant must "affirmatively demonstrate that the trial court misunderstood its sentencing discretion."'" (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988.) "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.)

**B. Analysis**

### 1. Section 1385, Subdivision (c)(2)(I) is Inapplicable

Appellant argues there is evidence that the gun he used was a well-made replica and, therefore, the trial court should have considered the mitigating circumstance that the firearm was inoperable or unloaded pursuant to section 1385, subdivision (c)(2)(I).

At resentencing, appellant's trial counsel argued there was "strong evidence" that the gun was not real. Counsel argued the court had discretion "if there's any lingering doubt that it was a real gun, I believe, to not impose the [section] 12022.53 enhancement, or in the alternative … not to impose it multiple times .…"

Section 12022.53, subdivision (b), provides "a person who, in the commission of a felony specified in subdivision (a),[2] personally uses a firearm, shall be punished by an

---

**2**    Including kidnapping to commit oral copulation, carjacking, and robbery. (§ 12022.53, subd. (a)(3)–(5).)

7.

additional and consecutive term of imprisonment in the state prison for 10 years.  The firearm need not be operable or loaded for this enhancement to apply."  Firearm is defined as "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion."  (§§ 12001, 16520, subd. (a).)  "Thus, toy guns obviously do not qualify as a 'firearm,' nor do pellet guns or BB guns because, instead of explosion or other combustion, they use the force of air pressure, gas pressure, or spring action to expel a projectile."  (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435.)

When the jury found true beyond a reasonable doubt that appellant personally used a firearm in the commission of counts 2, 3, and 5, the jury necessarily found the firearm appellant used was not merely a pellet or BB gun, but a firearm which "expelled through a barrel, a projectile by the force of an explosion or other form of combustion." (§§ 12001, 16520, subd. (a).)  In the prior appeal, this court found substantial evidence supported the jury's verdict and affirmed the jury's finding.  (*Smart, supra*, F083799 [2023 Cal.App. Unpub. Lexis 5038, *20].)  Appellant's argument that the firearm was actually a "well-made replica" is unsupported by the record.

Likewise, the record does not present any evidence the firearm was inoperable or unloaded.  To the contrary, appellant's use of the firearm to threaten and sexually assault the victim is circumstantial evidence the gun was operable and loaded.  The trial court was "entitled to take defendant at his word, so to speak, and infer from his conduct that the pistol was a real, loaded firearm and that he was prepared to shoot the victim with it if [he] did not comply with his demand."  (*People v. Monjaras, supra*, 164 Cal.App.4th at p. 1437.)  The trial court did not abuse its discretion when it declined to strike the firearm enhancement based on appellant's arguments that the firearm was not a real gun.

### 2. Forfeiture

"In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise

certain issues at the time of sentencing.  In such cases, lack of a timely and meaningful objection forfeits or waives the claim." (*People v. Scott* (1994) 9 Cal.4th 331, 351.)

"'[N]either forfeiture nor application of the forfeiture rule is automatic.  [Citation.] Competing concerns may cause an appellate court to conclude that an objection has not been forfeited.'" (*In re F.M.* (2023) 14 Cal.5th 701, 710.)  Nonetheless, "[a] defendant cannot for the first time on appeal challenge the manner in which the sentencing judge exercises discretion in making sentencing choices or articulates his or her supporting reasons.  [Citation.] … [A] defendant's objections regarding claimed sentencing mistakes must be sufficiently specific and meaningful to allow the trial court to correct the errors. [T]he sentencing judge has no obligation, when faced with an omnibus objection, to inquire further in an effort to ferret out the basis for the objection as it may exist in the mind of defense counsel." (*People v. de Soto* (1997) 54 Cal.App.4th 1, 4.)

Appellant argues the trial court should have considered the mitigating circumstance that "application of the [firearm] enhancement could result in a sentence of over 20 years" pursuant to section 1385, subdivision (c)(2)(C).  However, appellant did not bring this mitigating circumstance to the trial court's attention during resentencing. Although he did not cite the statute directly, appellant requested the trial court exercise its discretion pursuant to section 1385, subdivision (c), when he argued the firearm was not a "real gun."  Thus, appellant had the opportunity to argue the section 1385, subdivision (c)(2)(C) and (I), mitigating circumstances, and chose not to.  The argument is forfeited on appeal.

### 3. *Ineffective Assistance of Counsel*

Appellant argues trial counsel was ineffective for failing to argue the firearm enhancements must be dismissed due to the mitigating circumstances in section 1385, subdivision (c)(2)(C) and (I).

To establish a claim for ineffective assistance of counsel, "[a] defendant must demonstrate that:  (1) his attorney's performance fell below an objective standard of

reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to the defendant. [Citation.] A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*People v. Stanley* (2006) 39 Cal.4th 913, 954, citing *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.)

Appellant argues because he was sentenced to two life sentences, the enhancements were unnecessary and the trial court would have struck them had trial counsel properly objected. The trial court was made aware of its discretion to strike the firearm enhancement when appellant requested the trial court consider that the gun was not a real weapon, and the trial court declined to do so. Likewise, appellant requested his sentences run concurrently. Had the court believed the enhancements were unnecessary as appellant contends, the trial court could have run the determinate sentences and firearm enhancements concurrent with the life sentences. The trial court declined to do so.

Even if appellant's trial counsel's failure to bring section 1385, subdivision (c)(2)(C) and (I), to the trial court's attention constituted performance that fell below an objective standard of reasonableness, the record does not show there is a reasonable probability that the trial court would have imposed a more favorable sentence had the statute been specifically brought to its attention.

## II.     The Abstract of Judgment Must Be Corrected

At resentencing, the trial court sentenced appellant to the middle term of five years on count 3, the carjacking offense. However, the abstract of judgment filed August 5, 2024, while marking that the middle term was imposed, indicated a sentence of nine years. The aggregate term imposed, indicated on line 13 of the abstract, was otherwise correct.

10.

Appellant argues and the Attorney General agrees, the abstract of judgment must be amended to reflect the middle term of five years on count 3. We will order the trial court to correct the abstract of judgment accordingly.

**<u>DISPOSITION</u>**

The judgment of conviction is affirmed.  The matter is remanded to the trial court with instructions to prepare a new and corrected abstract of judgment, indicating a middle term sentence of five years on count 3, as set forth in this opinion, and to forward a copy of the corrected abstract of judgment to the appropriate authorities.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


DeSANTOS, J.


11.