Filed 6/17/24  P. v. Tyree CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097581 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE012141) |
| v. | |
| TRACIE EVAN TYREE et al., | |
| Defendants and Appellants. | |

After a jury trial, defendants Traice Evan Tyree and Johnny Oshay Jackson were convicted of carjacking and brandishing a firearm. The jury also found that they each personally used a firearm during the offense. On appeal, Tyree claims there was insufficient evidence that he had a firearm. Tyree also argues that the trial court improperly imposed the middle term sentence for the carjacking conviction and improperly sentenced him as a second strike offender when he did not personally

1

stipulate to any of the aggravating factors or his prior strike conviction. While we affirm Tyree's convictions on the underlying charges, we reverse the finding on his prior strike conviction and remand his matter for a new hearing on that allegation and a new sentencing hearing. With respect to Jackson, we agree that his abstract of judgment must be corrected. Otherwise, we affirm Jackson's judgment and sentence.

## BACKGROUND

J.C. had known Tyree, who was 24 years old, for over 10 years. Although J.C. considered Tyree a friend, they had "sexual encounters here and there." On July 15, 2021, J.C., Tyree, and another man named Mali stayed at a hotel in downtown Sacramento. While at the hotel with Tyree, J.C. received Instagram messages from Jackson, with whom she had also been intimate. In these messages, Jackson expressed dissatisfaction with his relationship with J.C. and ultimately told J.C. that she was "the type of . . . bitch that he will strip."[1]

The next morning, J.C. went to the bank and withdrew about $2,000. Afterwards, she went back to the hotel and took a shower. When J.C. got out of the shower, Tyree and Mali had left the hotel room and J.C.'s money was missing from her wallet.

Later that day, J.C. drove her car to her sister's apartment. At some point in the evening, J.C. went outside to meet a boyfriend she had not seen in a while.

Around midnight, after talking with her boyfriend in or near his car, J.C. walked to her car to retrieve a bottle of liquor. She saw a white Infinity pull up behind her boyfriend's car and turn off its lights.

---

[1]     J.C. testified "stripping is taking, whatever they can take from you when they see you."

2

While J.C. was standing by her boyfriend's car, the white Infinity pulled up closer to her and Tyree got out of the driver's seat. Jackson and Mali also got out of the Infinity.

J.C. testified at trial that when Jackson got out of the car, "he reached for his waistband, pulled out a gun, and cocked it back and . . . [said], 'What was all that shit you were talking?' "

Eventually, Tyree forcibly took J.C.'s keys from her hands. J.C. then ran towards her car. Mali followed J.C. to her car and ended up taking J.C.'s backpack out of her car. Tyree approached J.C. and physically removed her from her car by pulling her dress and ripping it.

T.G., J.C.'s sister, also testified at trial. She testified that she was outside during the altercation. T.G. had known Tyree for a few years. As Tyree was dragging J.C. from her car, T.G. got in between them and put her hands up to create a barrier. T.G. testified to the following: Tyree said, "[B]aby, you know I'm a thug. He lifted up his shirt. There was a Glock [i]n his pants . . . ." T.G. explained that "it looked like a glock and only reason I know that is because I have a cousin who takes pictures with those types of guns . . . and I can tell by the base of the gun . . . the only thing that was covered was from the trigger down."

When T.G. warned Tyree that she was going to get help, Jackson pulled his gun on T.G. and pointed it at her face. T.G. then called 911. Tyree ultimately gave J.C.'s keys to Jackson and told him that "he had a new car." Jackson "took off" in J.C.'s car. Tyree drove off in the Infinity.

Tyree and Jackson were arrested the next day at Tyree's sister's apartment; J.C.'s car was found nearby. The apartment and Tyree's Infinity were searched; no guns were found. However, a BB gun was found in the apartment.[2]

A police officer testified that sometimes, with the more modern, updated BB guns, it can be difficult to tell a BB gun from a real gun without handling it.

Steven Anderson, a private investigator, testified on behalf of Jackson. Anderson explained that at defense counsel's request he met with T.G. During the interview, T.G. said that Jackson did not have a gun on the night of the carjacking. T.G. did, however, report that Tyree had a gun in his waistband.

Tyree testified on his own behalf.[3] Tyree claimed that J.C. had driven her car to his sister's residence on the night of July 15, 2021, and that she had left the car there when they went to the hotel.

Tyree claimed that J.C. had given him approximately $350 while at the hotel, but he denied that he had taken any other money from her. Tyree admitted he and Jackson had gone to T.G.'s apartment that night but claimed it was because he was told there was a party in the area. He claimed that he did not know that J.C. or T.G. would be there. Tyree saw J.C. after parking his car. According to Tyree, J.C. started screaming at him and Jackson, telling them they needed to leave. T.G. also screamed at them and shoved Tyree's face. Tyree said that he and Jackson both returned to Tyree's car and left in Tyree's Infinity. Tyree denied that he or Jackson had any guns with them. He also

---

**2**      We do not find, and the parties do not otherwise inform us of, any indication in the record that either the BB gun or a photo of it was produced at trial, nor was it described through testimony.

**3**      He admitted that he had a prior felony conviction and that for close to a year prior to the offense, he supported himself by selling drugs, not including marijuana.

denied that he or Jackson had ever put their hands on J.C., taken her keys, or taken her car.

Tyree and Jackson were charged with carjacking (Pen. Code, § 215, subd. (a))[4] with an allegation that each defendant personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)) (count one) and brandishing a firearm, a misdemeanor (§ 417, subd. (a)(2)) (count two). Several additional aggravating factors for sentencing purposes were also alleged as to each defendant. As to Tyree, the prosecution alleged that he had a prior strike conviction for robbery for purposes of sections 1192.7 and 667, subdivisions (b) through (i) and a prior serious conviction for purposes of 667, subdivision (a).

Prior to the verdict, defense counsel stated that Tyree would stipulate to some sentencing aggravating factors and the prosecutor indicated that, in light of that, she was willing to dismiss the remaining aggravating factors. Counsel also indicated that Tyree would admit to the prior strike conviction.

During closing arguments, defense counsel for Tyree argued that the recovery of the BB gun, but no firearms, resulted in reasonable doubt that an actual firearm was used. Counsel also challenged T.G.'s credibility and urged the jury to disregard her testimony.

A jury found Tyree and Jackson guilty on both counts and found both firearm allegations true as to count one.

The court subsequently sentenced Jackson to an aggregate term of seven years, consisting of: three years, the low term, on count one, plus four years, the midterm, for the firearm enhancement under section 12022.5, subdivision (a). Tyree was sentenced to an aggregate term of 14 years, consisting of: five years, the midterm, on count one, doubled for the prior strike, plus four years for the firearm enhancement under section

---

[4]   Undesignated statutory reference are to the Penal Code.

5

12022.5, subdivision (a).  The court struck the five-year prior serious felony enhancement.

Each defendant filed a notice of appeal.

## DISCUSSION

### I

*Tyree's Firearm Enhancement*

Tyree asserts there was insufficient evidence to support the jury's findings that he personally used a firearm during the carjacking.  The People disagree, as do we.

The same standard of review to determine the sufficiency of the evidence for a conviction applies to an enhancement.  (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)  In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the . . . verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Tyree notes that only T.G. testified that Tyree had a gun and argues her testimony is not conclusive on the matter because she said it was covered "from the trigger down," as it was tucked into Tyree's waistband, and therefore she could not see most of the object.  He also argues that in light of the evidence that only a BB gun was recovered, the

6

inference should be drawn that if he had anything in his waistband, it was the BB gun. According to Tyree, T.G. was likely mistaken because, as a police officer testified, it can be difficult to tell the difference between a BB gun and a firearm without handling them.

Tyree relies on *People v. Dixon* (2007) 153 Cal.App.4th 985 to support his argument. We are not persuaded that *Dixon* is helpful to Tyree's cause. The defendant in *Dixon* waived his right to a jury trial on robbery and other charges, and his case was tried to the court. (*Id*. at p. 988.) The court concluded the prosecution did not prove beyond a reasonable doubt that the gun the defendant used during several robberies was a firearm, because there was evidence it might have been a pellet gun or BB gun. (*Id*. at p. 1001.) As here, the guns used in the robberies were never found. In *Dixon*, the victims were unfamiliar with guns and could only say the robbers had what appeared to be guns. (*Id.* at pp. 989-990, 1001.) Accordingly, the "court . . . concluded that Dixon had personally used a deadly weapon (a pellet or BB gun), a violation of section 12022, subdivision (b), and a lesser included offense of the enhancement actually charged (personal use of a firearm, § 12022.53, subd. (b))." (*Id.* at p. 988.)

*Dixon*, however, did not involve an appellate claim of insufficiency of the evidence to support firearm use enhancements. Rather, the issue was whether the defendant had received adequate notice he was being charged with personal use of a deadly weapon under section 12022, subdivision (b). (*People v. Dixon, supra*, 153 Cal.App.4th at p. 1001.) Here, by contrast, the jury heard the evidence regarding T.G.'s identification of the object in Tyree's waistband as a Glock. They also heard challenges to her credibility yet were convinced beyond a reasonable doubt that Tyree personally used a firearm during the carjacking. Substantial evidence supports this finding.

T.G. testified that she saw the base of the gun and recognized it as a Glock firearm because her cousin appreciates guns and publicizes photos of himself with Glocks. T.G. provided a basis for her identification of the object in Tyree's waistband as a gun and her

testimony was not inherently improbable or physically impossible. "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Moreover, as Tyree was physically removing J.C. from her car, he showed T.G. the weapon and said, "baby, you know I'm a thug." When, as here, a defendant commits a type of a robbery by displaying an object that looks like a gun, "the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm." (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1437.)

Contrary to Tyree's claim, the fact that a BB gun was found the next day at his sister's apartment does not undermine the factual support for the jury's finding that Tyree personally used a firearm during the carjacking. Critically, Tyree testified that nobody in his group had a gun that night. No description of the BB gun was provided at trial, nor was the BB gun presented as an exhibit at trial. Thus, there is no evidence that the BB gun recovered looked similar to the object T.G. identified as a firearm. Finally, although an officer testified that, sometimes, with the more modern, updated BB guns, it can be difficult to tell a BB gun from a real firearm without handling it, there was no testimony that the BB gun recovered was of such an ilk.

We agree with the People that *People v. Monjares, supra*, 164 Cal.App.4th 1432 is instructive. In *Monjaras*, the defendant told the victim to give him her purse, and he pulled up his shirt to display the handle of a pistol tucked into his waistband. (*Id*. at p. 1434.) The victim could not say whether the pistol was a toy or a real gun, or even whether it was plastic or metal. (*Id*. at p. 1436.) The Court of Appeal nevertheless upheld the jury's conclusion that the defendant had used a gun in committing the robbery: "[T]he jury was entitled to take defendant at his word, so to speak, and infer from his conduct that the pistol was a real, loaded firearm and that he was prepared to shoot the victim with it if she did not comply with his demand." (*Id*. at p. 1437.)

The same reasoning applies even more forcefully here. T.G. testified that she recognized the object as a Glock firearm. Under *Monjaras* and similar authority, the jury was entitled to take her at her word. (See *People v. Monjaras, supra*, 164 Cal.App.4th at p. 1436 [noting that firearms used in robberies are often never recovered and circumstantial evidence alone is sufficient to support a finding that an object used by a robber was a real firearm].)

II

*Tyree's Prior Strike*

Tyree asserts, and the People agree, that the trial court erred in sentencing Tyree as second strike offender without obtaining his personal admission as to the existence of his prior strike conviction and requests that we remand the cause for either a trial on the prior conviction allegation or Tyree's personal admission to such. We agree with the parties.

*A. Additional Background*

During trial, the court asked defense counsel whether he had an opportunity to speak to Tyree as to whether he wished to testify, and counsel answered affirmatively; Tyree would testify. During his testimony, Tyree admitted he had a prior felony conviction involving moral turpitude and that "I pled guilty to that case because I was guilty."

While discussing jury instructions, the court addressed defense counsel and Tyree, stating: "[W]hen the jury goes out, please have—we have time now if you wish to now have a conversation with your client if there is a felony conviction, if he wants the trial on the prior by the jury or by court." The court explained further that if the jury returned with felony convictions: "[T]here will be a short trial on aggravating circumstances, then they go back out an[d] deliberate. [¶] Then I am asking [defense counsel] right now, if he wants the prior, trial on the prior conviction, by the same jury or if he would want that by the Court maybe at J and S. [¶] . . . [¶] . . . He could waive jury trial on the prior conviction and have court look at it . . . ."

9

While the jury was deliberating, the parties discussed in chambers whether, if the jury returned guilty verdicts in this case, the parties were willing to stipulate to certain aggravating factors. On the record, the prosecution agreed to dismiss any remaining aggravating factors in light of the stipulation. Defense counsel stated that Tyree was stipulating to some sentencing aggravating factors and the following exchange then took place:

"[Defense Counsel]: Your Honor, sorry. With respect to Mr. Tyree, we'll also be admitting the prior strike conviction.

"THE COURT: Okay. [¶] Mr. Tyree, if there is a conviction, is admitting the prior strike, 211, correct?

"[Defense Counsel]: Yes, your Honor.

"THE COURT: Got it."

*B. Analysis*

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each. [Citations.]" (*People v. Cross* (2015) 61 Cal.4th 164, 170.) These are commonly referred to as "*Boykin-Tahl* advisements." (*People v. Mosby* (2004) 33 Cal.4th 353, 365; see *Boykin v. Alabama* (1969) 395 U.S. 238, 243; *In re Tahl* (1969) 1 Cal.3d 122, 132.) This rule has been extended to apply "when a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment." (*Cross*, at p. 170, citing *In re Yurko* (1974) 10 Cal.3d 857, 863.)

The failure to properly advise a defendant of his or her trial rights is not reversible if " 'the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' " (*People v. Cross, supra*, 61 Cal.4th at p. 171.) "[I]n applying the totality of the circumstances test, a reviewing court must 'review[ ] the

whole record,' " not " 'just the record of the plea colloquy.' " (*Id*. at pp. 179-180.) "[I]f the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*People v. Mosby, supra*, 33 Cal.4th at p. 361.)

Here, the record establishes the court urged counsel to have a conversation with Tyree regarding his right to have a jury or court trial on his prior conviction. The court also discussed the general process regarding trials for prior convictions with defense counsel in Tyree's presence. But, the court never discussed Tyree's right to a jury or court trial with Tyree personally. Moreover, the trial court completely failed to advise Tyree of his right to remain silent and right to confront witnesses. Finally, the court never took Tyree's personal waiver of these rights. This was error. (*People v. Mosby, supra*, 33 Cal.4th at p. 356.) Accordingly, we must review the entire record to determine whether Tyree's admission was voluntary and intelligent. (*Id.* p. 361.)

This case is similar to the situation in *Cross*, where the California Supreme Court determined there was no evidence of a voluntary and knowing admission of a prior conviction. In *Cross*, during the prosecutor's examination of the first witness in the trial (and prior to cross-examination), defense counsel stipulated that Cross was convicted of a prior felony violation. The trial court accepted this stipulation without advising Cross of any trial rights or the penal consequences of admitting a prior conviction. (*People v. Cross, supra*, 61 Cal.4th at p. 169.) The trial court did not ask whether Cross had discussed the stipulation with his lawyer; nor did it ask Cross any questions or in any way inform him of his right to a trial on the prior conviction allegation. Accordingly, the court determined that nothing in the record affirmatively showed that Cross was aware of his right to a fair determination of the truth of the prior conviction allegation and set aside the stipulation. (*Id*. at p. 180.)

11

Here, as in *Cross*, after counsel purported to admit the prior strike on behalf of Tyree, the trial court immediately accepted it without ever speaking directly to Tyree or advising Tyree of his rights. Also, as in *Cross*, the trial court did not ask whether Tyree had discussed the admission with his lawyer; nor did it ask Tyree any questions. Accordingly, the record does not affirmatively show that defense counsel's statement, "we'll also be admitting the prior strike conviction," was a knowing and voluntary admission by Tyree. We must, therefore, set aside the purported admission, reverse the sentences, and remand the matter for either a trial on the prior strike conviction or Tyree's personal admission of the conviction for strike purposes and a new sentencing hearing.

In light of our conclusion, we need not address Tyree's remaining issue challenging the trial court's imposition of the middle term instead of the low term sentence under section 1170, subdivision (b)(6)(B). Tyree will have an opportunity to raise the issue at the new sentencing hearing. Nor is it necessary to address the People's observation of the error on Tyree's abstract of judgment listing a term imposed as a sentence under section 12022.53, subdivision (b) rather than 12022.5, subdivision (a), as a new abstract of judgment must issue following the new hearing.

For the purposes of a new sentencing hearing, however, we note that it appears the trial court failed to impose a term on the section 417 misdemeanor (brandishing a firearm). "There is no authority for a court to refrain from imposing sentence on all counts, except where probation is granted." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.) To the extent the trial court determined that section 654 applied to count two, the trial court must impose sentence on that count and then stay execution of that sentence. (*Alford*, at p. 1466.) "A full resentencing may involve the trial court's revisiting such decisions as the selection of a principal term, whether to stay a sentence, whether to impose an upper, middle, or lower term, and whether to impose concurrent or consecutive sentences. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425.)" (*People v. Jones* (2022) 79 Cal.App.5th 37, 46.)

## III

### *Abstract of Judgment*

With regard to defendant Jackson, the parties agree, as do we, that this court should correct two errors in his abstract of judgment.

First, the trial court expressly stated that it was imposing the firearm enhancement under section 12022.5, subdivision (a), but the abstract of judgment lists the statute as section 12022.53, subdivision (b). Given this discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls and the abstract of judgment must be corrected. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 386.)

Additionally, the abstract of judgment indicates that Jackson was sentenced pursuant to the "Three Strikes" law, despite the fact that there is no indication in the record that Jackson suffered a prior strike conviction. When there is an error or omission in the abstract of judgment it is important that the courts correct those errors. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

This court has the authority to correct clerical errors at any time. (*People v. Mitchell, supra*, 26 Cal.4th at pp. 186-187.) Accordingly, we order box No. 2 of the abstract of judgment corrected to reflect a firearm enhancement pursuant to section 12022.5, subdivision (a), associated with count one. We also order box No. 4 of the abstract of judgment corrected to omit reference to a strike prior under sections 667, subdivision (b) through (i) or 1170.12.

## DISPOSITION

As to Jackson, the judgment and sentence are affirmed. However, we order the trial court to correct Jackson's abstract of judgment to reflect a firearm enhancement pursuant to section 12022.5, subdivision (a), associated with count one, and to omit reference to a strike prior under sections 667, subdivisions (b) through (i) or 1170.12.

As to Tyree, we affirm the convictions, but we reverse the sentence and remand the matter for a new hearing on the prior strike allegation, consistent with our opinion, and a new sentencing hearing.

<br>

                                         _____/s/_____

                                         EARL, P. J.

We concur:

_____/s/_____
HULL, J.

_____/s/_____
FEINBERG, J.